adequately, and any agreement between husband and wife which undertakes to limit the former's liability to a specific provision to that extent, at least, tends to relieve him in that respect, since, if the agreement is held to be operative, its effect would be to preclude all inquiry into the sufficiency of the provision.

Our conclusion is that the attempted agreement between the parties to this action was not sanctioned by the domestic relations law, and the judgment should therefore be reversed, and the complaint dismissed, with costs.   All ·concur.

(89 App. Div. 245.)

### ROSIN v. LIDGERWOOD MFG. CO.

(Supreme Court, Appellate Division, Second Department.   December 30, 1903.)

1. STATUTE—CONSTRUCTION—TITLE.
   While the title constitutes no part of an act, it may be considered as a key to the correct interpretation thereof where the intent is otherwise ambiguous.

2. SAME—ABROGATION OF COMMON LAW.
   There can be no inference that the Legislature intended by Laws 1902, p. 1748, c. 600, entitled "An act to extend and regulate the liability of employers," to abrogate any right of action existing under the statutes or common law, unless such intention is clearly to be drawn from the language of the act itself.

3. SAME—PRESUMPTION.
   An intention to change the rule of the common law will not be presumed from doubtful statutory provisions.   The presumption is that no such change is intended unless the statute is explicit and clear in that direction.

4. SAME—CUMULATIVE REMEDY—ELECTION.
   Where a remedy existed at the common law for the wrong or injury against which a remedial statute is directed, if such statute provides a more enlarged or summary or more efficient remedy for the party aggrieved, but does not in terms or by necessary implication deprive him of the common-law remedy, the statutory remedy is considered as merely cumulative, and the party injured may resort to either at his election.

5. MASTERS—INJURIES TO SERVANTS—EMPLOYERS' LIABILITY—NOTICE OF INJURY.
   Laws 1902, p. 1748, c. 600, extends the common-law liability of employers for negligence resulting in injury to servants so as to render the employer liable for the negligence of persons intrusted with superintendence, and gives to the injured employé, or in case of death, to his executor or administrator, the same remedies against the employer as he would have had had he not been an employé.   Section 2, p. 1749, of the act provides that no action for recovery for injury or death "under this act" shall be maintained, unless notice of the injury be given to the employer within 120 days thereafter.   Held, that the statute does not affect the employer's common-law liability nor the employé's right to recover in a common-law action without giving the notice required by section 2, but such notice is required only in actions to enforce the extended statutory liability imposed by the act.

6. STATUTES—CONSTRUCTION—UNCONSTITUTIONAL CONSTRUCTION.
   In the construction of a statute which is susceptible of two constructions, one of which will render it valid and the other void, and both

¶ 5. See Master and Servant, vol. 34, Cent. Dig. § 806.

are equally reasonable, the courts will adopt the construction which renders the act valid, rather than the one which avoids it.

7. CONSTITUTIONAL LAW—EQUAL PRIVILEGES—DISCRIMINATIONS IN CONDITIONS OF SUIT.

Const. art. 1, § 1, provides that no member of the state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof unless by the law of the land or the judgment of his peers. Section 18 of the same article provides that the existing right of action to recover damages for death shall never be abrogated, thereby ingrafting into the Constitution the existing conditions of Code Civ. Proc. §§ 1902–1904, giving to executors of the decedents the same right to recover damages for an act resulting in the decedent's death which the decedent would have had had he not died. Laws 1902, p. 1748, c. 600, extending the liability of employers, and giving actions to employés or their executors for breaches of duty specified therein, provides in section 2, p. 1749, that no action for injury or death under the act shall be maintained unless notice of the accident shall be given within 120 days of such occurrence, or within 60 days of the appointment of an administrator. *Held* that, if the act be construed so as to require the specified notice in actions against employers for a breach not of the duties imposed by the act, but of their common-law duties, it imposes an additional burden on employés which is not imposed on others for wrongs resulting in injury or death, and would be in conflict with the constitutional provision first above cited.

8. SAME.

For the same reasons the act, if so construed, would violate Const. U. S. Amend. 14, forbidding states from denying to any person equal protection of the law.

Appeal from Municipal Court of New York.

Action by Joseph Rosin against the Lidgerwood Manufacturing Company. From a judgment of the Municipal Court dismissing the complaint and denying a new trial, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

William F. Connell, for appellant.

John J. Kuhn, for respondent.

WOODWARD, J. The plaintiff's complaint was dismissed upon motion of the defendant upon the ground that it did not state facts sufficient to constitute a cause of action, in that it did not allege the giving of the notice required by section 2, c. 600, p. 1749, of the Laws of 1902, known as the "Employers' Liability Act." There is no suggestion of any other defect in the complaint, which sets forth a good cause of action under the common law, and the questions presented upon this appeal are whether the giving of the notice provided in the act mentioned is necessary to a recovery in this acton, and, if it is, whether such act is constitutional.

The complaint was dismssed upon the authority of Gmaehle v. Rosenberg, 80 App. Div. 541, 80 N. Y. Supp. 705; Gmaehle v. Rosenberg, 83 App. Div. 339, 82 N. Y. Supp. 366, and Johnson v. Roach, 83 App. Div. 351, 82 N. Y. Supp. 203, where the question has been more or less involved, and the great respect which is due to a court of co-ordinate jurisdiction and powers demands that we should not lightly disregard its construction of the law. Yet the members of this court are oath-bound to discharge the duties of an appellate

court, and we may not disregard our own convictions upon a question involving the rights of litigants in the discharge of those duties. Chapter 600, p. 1748, of the Laws of 1902, is entitled "An act to extend and regulate the liability of employers to make compensation for personal injuries suffered by employés," and, while the title constitutes no part of the act, it is well established by authority that it may be considered as a key to the correct interpretation of the statute, where that intent is otherwise somewhat ambiguous. People ex rel. C. Ins. Co. v. Coleman, 121 N. Y. 542, 544, 25 N. E. 51. The word "extend" implies something to be extended (12 Am. & Eng. Ency. of Law, 572), and there cannot, therefore, be any inference that the Legislature intended to abrogate any right of action existing under the statutes or the common law, unless such an intention is clearly to be drawn from the language of the act itself. It is to be noted, also, that the act is not to regulate the remedy, as it has been construed in another department of this court, but "to extend and regulate the liability of employers." The natural construction of the title, it seems to us, is that the liability of employers, as it existed at the time of the enactment of chapter 600, p. 1748, of the Laws of 1902, was to be extended and regulated, and, as the act does not purport to furnish any new remedy, but does extend the liabilities of employers, the limitation upon the "action for recovery of compensation for injury or death under this act" must relate not to the remedies existing under the common law and statutes as they were, but to the new liabilities which have been imposed "under this act." This is the clear language of the statute itself in section 2 of the act, and we know of no rule of construction which justifies extending the operation of a statute for the purpose of working an injustice to one who has a legal wrong to be righted. See Dean v. M. E. R. Co., 119 N. Y. 540, 547, 23 N. E. 1054. "A construction of an act should be avoided which would injuriously affect the rights of others, and that sense should be attached to its provisions which will harmonize its objects with the preservation and enjoyment of all existing rights." S. R. T. Co. v. Mayor, etc., of New York, 128 N. Y. 510, 523, 28 N. E. 525, 529. It may not be presumed that the Legislature in an act "to extend and regulate the liability of employers" intended to take away any of the rights or privileges secured to citizens of this state by the law of the land. See section 1, art. 1, Const. The general rule is that an intention to change the rule of the common law will not be presumed from doubtful statutory provisions. The presumption is that no such change is intended, unless the statute is explicit and clear in that direction. Jones v. City of Albany, 151 N. Y. 223, 226, 45 N. E. 557, and authorities there cited. As the plaintiff's cause of action and his remedy exist at common law, unless that right is clearly taken away by the provisions of the act in question, it should not be extended by the courts to work a wrong. To the extent that this statute creates a new right and regulates or creates a remedy for such new right, there is no doubt that the remedy or its regulation is exclusive (City of Rochester v. Campbell, 123 N. Y. 405, 414, 25 N. E. 937, 10 L. R. A. 393, 20 Am. St. Rep. 760), but the rule is of universal application that, where "a statute (or the common

law, which has the force of a statute until altered or repealed—section 16, art. 1, Const.) enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law." Willy v. Mulledy, 78 N. Y. 310, 314, 34 Am. Rep. 536, and authorities there cited; City of Rochester v. Campbell, supra. So, where a remedy existed at the common law for a wrong or injury against which a remedial statute is directed, if such statute provides a more enlarged or summary or more efficient remedy for the party aggrieved, but does not in terms or by necessary implication deprive him of the remedy which existed at common law, the statutory remedy is considered as merely cumulative, and the party injured may resort to either at his election. Clark v. Brown, 18 Wend. 213, 220. This doctrine is old as the common law, for Lord Coke lays down the proposition that a statute made in the affirmative, without any negative expressed or implied, does not take away the common law, and this rule is now elementary. Hardmann v. Bowen, 39 N. Y. 196, 198, and authorities there cited; Stafford v. Ingersol, 3 Hill, 38, 41; D. C. M. Ins. Co. v. Van Wagonen, 132 N. Y. 398, 401, 30 N. E. 971, and authorities there cited. In the Hardmann Case, supra, it is said:

"The rule has sprung up under the decisions in regard to remedies, and all that is held is that, if the statute gives a new remedy, and is merely affirmative in its terms, without any negative, express or implied, it does not take away the common-law remedy."

It has been well said that it "is a familiar principle that statutes are to be construed in reference to the principles of the common law, for it is not to be presumed that the Legislature intended to make any innovation upon the common law, further than the case absolutely requires. 1 Kent's Com. [3d Ed.] 463. This has been the language of the courts in every age. It is said also that four things are to be considered in the interpretation of all statutes: (1) What was the common law before the act? (2) What was the mischief against which the common law did not provide? (3) What remedy has the Legislature provided to cure the defect? And (4) what was the true reason of that remedy?" White v. Wager, 32 Barb. 250, 261; Id., 25 N. Y. 328. Unquestionably the common law gives a remedy to an employé who is injured through the neglect of any duty which the master owes to the servant. That was the common law before the enactment of the statute now under consideration. The mischief against which the common law did not provide—if we may term it a mischief—was that it did not provide for damages for one who was injured through the negligence of a fellow servant unless that servant was in a position where he acted for and in the discharge of a duty owed by the master. To cure this supposed defect, the Legislature has extended the liability of the master, who must answer for an injury due to "the negligence of any person in the service of the employer intrusted with and exercising superintendence, whose sole or principal duty is that of superintendence, or in the absence of such superintendent, of any person acting as superintendent with the authority or consent of such employer. The

employé, or in case the injury results in death, the executor or administrator of a deceased employé who has left him surviving a husband, wife, or next of kin, shall have the same right of compensation and remedies against the employer as if the employé had not been an employé of nor in the service of the employer, nor engaged in his work." Section 1, c. 600, p. 1748, Laws 1902. And the true reason of that remedy was, we may infer, that the Legislature deemed it wise to "extend and regulate the liability of employers." And the same section provides: "The provisions of law relating to actions for causing death by negligence, so far as the same are consistent with this act, shall apply to an action brought by an executor or administrator of a deceased employé suing under the provisions of this act." That is, the Legislature has given to employés a new cause of action—a cause of action which did not accrue at common law because of the negligence of a superintendent, unless he was discharging a duty which belonged to the master—and it has provided that such employé shall have the same "right of compensation and remedies" as though the relation of master and servant did not exist. In other words, facts and circumstances which did not heretofore constitute actionable negligence are, by the statute, placed upon the same footing with common-law actions for negligence, and the remedy provided for this new right, which must be exclusive (City of Rochester v. Campbell, supra), is made to depend upon the service of a notice giving the time, place, and cause of the injury to the employer within 120 days after the injury. Why should this limitation upon the remedy thus provided for a new cause of action be extended by construction to the remedy which exists at common law for the common-law cause of action for negligence? The man who stands upon his common-law rights, who goes into court prepared to establish a cause of action under the law of the land as it existed before and since the adoption of chapter 600, p. 1748, of the Laws of 1902, gets no benefit from the statute, and it comports with reason and natural justice that he should not be called upon to bear its burdens unless such a result is absolutely required by the statute, or by some controlling considerations of public policy plainly and unmistakably to be gathered from the language of the law. The plaintiff in this action sets forth a good cause of action at common law for injuries due to the negligence of a duty owed by the defendant to the plaintiff. The right in no wise depends upon the statute. It exists at common law, which the statute does not assume to change; and we are of opinion that, so long as the plaintiff relies upon his common-law right of action, he cannot, under the provisions of chapter 600, p. 1748, of the Laws of 1902, be compelled to give a notice as a condition precedent to his right to litigate the issues. That would be reading into the statute a regulation of a remedy for a cause of action not created by the statute, and for which there is no possible justification to be found within the limits of the act. This was clearly the view which was taken by the learned court in Veginan v. Morse, 160 Mass. 143, 35 N. E. 451, cited in Johnson v. Roach, 83 App. Div. 351, 356, 82 N. Y. Supp. 203, as authority for a contrary construction, for it clearly appears that there were three

counts in the declaration—two of them under the employer's liability act, and the third under the common law—and the defendant requested the trial court to hold that, the notice required by the statute not having been served, the action could not be maintained under the employer's liability act. The court so ruled, and the trial proceeded under the common-law count. Page 144, 160 Mass., 35 N. E. 451. And upon appeal the court say:

"In statutes like that under which two counts of this action were brought, the requirement of notice is held to make a condition precedent to the right to bring an action, not on a nice interpretation of the particular words used, but upon a general view of what the Legislature would be likely to intend."

This held simply that as to the counts which sought recovery under the provisions of the employer's liability act, the notice was a condition precedent, but it nowhere appears in the opinion of the court that there was any doubt as to the right of the plaintiff to maintain a common-law action for the injuries he had suffered. On the contrary, the action was maintained upon the common-law count, and the same practice appears to have been followed in Ellsbury v. New York, etc., Railroad, 172 Mass. 130, 51 N. E. 415, 70 Am. St. Rep. 248, although the point was not discussed.

We are forced to conclude that, where a common-law cause of action is set up in a complaint, it is error to dismiss the same except upon a failure of proof; that the plaintiff, confining himself to his pleadings, and attempting to gain no rights under the employer's liability act, is not governed by the provision for a notice within 120 days. This construction gives the statute all the force and effect which was intended. It gives a new cause of action and regulates the common-law remedy in so far as it applies to this new cause of action, and it would be dangerous to extend this burden to those who assert rights under the common law or under statutes complete in themselves. There is, as we have already pointed out, no presumption that the Legislature has intended to change the common law, and affirmative statutes are declarative only, and leave the common law in force. Dutchess County Mut. Ins. Co. v. Van Wagonen, supra. But, if this construction were less plain than it appears to us under the authorities already cited, we should still be constrained to hold that the complaint in this action was improperly dismissed, under the rule that in the construction of a statute which is susceptible of two constructions, one of which will render it valid and the other void, and both are equally reasonable, the courts incline to and will adopt that construction which renders the act valid, rather than one which avoids it (People ex rel. Sinkler v. Terry, 108 N. Y. 1, 7, 14 N. E. 815), because we have no doubt that under the construction which has been given to this statute it is in contravention of several very important provisions of the state and federal Constitutions. Section 2, c. 600, p. 1749, of the Laws of 1902, provides that "no action for recovery of compensation for injury or death under this act shall be maintained unless notice of the time, place and cause," etc., shall be given within 120 days from the happening of the accident; but, if the person injured dies without having given this notice, it is provided that his executor or administra-

tor may do this within 60 days of his appointment. If this act is to be construed to extend to all cases arising under statutes and the common law where employés are concerned, and not to cases arising "under this act," as the statute reads, then there is room for a disagreement under the provisions of section 1 of article 1 and section 18 of the same article of the state Constitution, as well as under the fourteenth amendment to the federal Constitution. Section 18 of article 1 of the state Constitution provides: "The right of action now existing to recover damages for injuries resulting in death shall never be abrogated; and the amount recoverable shall not be subject to any statutory limitation." It is not to be doubted that by this provision the framers of the Constitution, and those who adopted it, intended to crystallize and embody in the fundamental law of the state—"the law of the land"—the entire statutory right of action, with its incidents, as defined in the original act (chapter 450, p. 575, of the Laws of 1847), and as fixed by sections 1902, 1903, 1904, and 1905 of the Code of Civil Procedure; this being evidenced by the fact that, as section 1904 then stood, it provided a limitation of $5,000 upon the recovery, while the constitutional provision continuing the right of action provided that it should not be subject to any statutory limitation. See Meekin v. B. H. R. R. Co., 164 N. Y. 145, 58 N. E. 50, 51 L. R. A. 235, 79 Am. St. Rep. 635. Speaking of this same provision of the Constitution and statute, in determining whether the provision doing away with the limitation was retroactive, the court in O'Reilly v. Utah, Nevada & Cal. Stage Co., 87 Hun, 406, 411, 34 N. Y. Supp. 358, 361, say:

"Upon the death of the intestate his administratrix had a fixed right to recover the damages sustained by his wife or next of kin by reason of his death, and the statute giving that right limited the defendant's liability to $5,000. Both litigants had rights and liabilities created and limited by those statutory provisions. By these statutes a new remedy was not simply provided, but a new right and liability were created, and the statutory provision became a part of the substantive law of the state. * * * The effect of the constitutional provision above quoted is twofold—it imposes a greater liability on persons wrongfully or unlawfully causing the death of others, and confers additional benefits on persons in whose favor a right of action is given for such wrongs," etc.

This case was approved (Isola v. Weber, 147 N. Y. 333, 41 N. E. 704), and has been followed, in Kiefer v. Grand Trunk R. Co., 12 App. Div. 28, 32, 42 N. Y. Supp. 171, and in Weber v. Third Avenue R. R. Co., 12 App. Div. 512, 42 N. Y. Supp. 789. See, also, Whitford v. Panama R. R. Co., 23 N. Y. 465, 469. In harmony with this view is the rule often laid down by the courts that, "where a statute gives a right unknown to the common law, and limits the time within which an action shall be brought to assert it, the statutory limitation measures the extent and qualifies the nature of the right conferred." Dailey v. N. Y. O. & W. R. R. Co., 26 Misc. Rep. 539, 540, 57 N. Y. Supp. 485; The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358; Wooden v. W. N. Y. & P. R. R. Co., 126 N. Y. 10, 26 N. E. 1050, 13 L. R. A. 458, 22 Am. St. Rep. 803; Hill v. Board of Supervisors, 119 N. Y. 344, 347, 23 N. E. 921. In the latter case it was said that, where the statute creates a new cause

of action, "the limitation of time is so incorporated with the remedy given as to make it an integral part of it, and the condition precedent to the maintenance of the action at all."

If we are correct in the view that the quoted section of the Constitution continued not only the right of action then existing, but its limitations and conditions as fixed by the statute (and they were all a part of the legislative enactments then in force, except as modified by the Constitution removing the limitation as to amount), it follows that an executor or administrator of "a decedent who has left him or her surviving a husband, wife, or next of kin" has an absolute right, during a period of two years, to "maintain an action to recover damages for a wrongful act, neglect, or default by which the decedent's death was caused, against a natural person who, or a corporation which would have been liable to an action in favor of the decedent, by reason thereof, if death had not ensued." This being an absolute right, guarantied by the Constitution, and relating not to employés who are injured "by reason of any defect in the condition of the ways, works, or machinery connected with or used in the business," etc., or "by reason of the negligence of any person in the service of the employer," etc. (section 1, c. 600, p. 1748, Laws 1902), but to any decedent "to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused" (section 1902, Code Civ. Proc.), it follows that any statutory provision which interferes with that right, and makes a condition precedent to apply only to employés, is void, as in excess of its powers, and as a denial of that equal protection of the law which is guarantied by the fourteenth amendment and by section 1 of article 1 of our state Constitution. By the provisions of section 1902 of the Code of Civil Procedure, now a part of the state Constitution, the executor or administrator of every decedent who is killed under circumstances which, at common law, would give him a right of action if he survived, is entitled to maintain an action for the benefit of surviving husband, wife, or next of kin during a period of two years, without any other limitations; while, if chapter 600, p. 1748, of the Laws of 1902, is given the construction which has been sanctioned in one department of this court, employés injured through the neglect of the master will be compelled to submit to a condition which is not imposed upon other citizens of this state as a condition of maintaining such actions. The first section of the first article of our Constitution provides—and its language is beautiful in its comprehensive simplicity —that "no member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers." It cannot be questioned that citizens of this state generally are entitled to maintain actions under the provisions which we have cited without giving any notice of the time or place of the accident. This right is guarantied to employés in common with every other citizen, where the right of action would have accrued at common law to the decedent if he had lived; but it is proposed by a system of judicial legislation to extend the provisions of chapter 600, p. 1748, of the Laws of 1902, intended to "extend and regulate the liability of employers," so as to compel all employés, whether proceeding at common law or under the statute, to

give a notice, which is not required of other citizens who are injured unto death through the wrongful or negligent acts of persons or corporations. "The clause 'law of the land,'" says that great jurist Mr. Justice Catron of the United States Supreme Court, in an opinion delivered in his state court when a judge, "means a general and public law, equally binding upon every member of the community. * * * The right to life, liberty, and property of every individual must stand or fall by the same rule of law that governs every other member of the body politic or 'land' under similar circumstances; and every partial or private law, which directly proposes to destroy or affect individual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional and void. Were this otherwise, odious individuals and corporate bodies would be governed by one rule, and the mass of the community, who made the laws, by another. The idea of a people, through their representatives, making laws whereby are swept away the life, liberty, and property of one or a few citizens, by which neither the representatives nor their other constituents are willing to be bound, is too odious to be tolerated in any government where freedom has a name. Such abuses resulted in the adoption of Magna Charta in England, securing the subject against odious exceptions, which is, and for centuries has been, the foundation of English liberty." Vanzant v. Waddel, 2 Yerg. (Tenn.) 260. See this case cited and approved in Cotting v. Kansas City Stock Yards Co., 183 U. S. 79, 105, 112, 22 Sup. Ct. 30, 46 L. Ed. 92. The same principle is stated in Cooley's Constitutional Limitations, quoted at page 109, 183 U. S., page 42, 22 Sup. Ct., 46 L. Ed. 92, in the last above cited case, where it is said:

"Every one has a right to demand that he be governed by general rules; and a special statute, which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments. Those who make the laws 'are to govern by promulgated, established laws, not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and the countryman at plow.' This is a maxim in constitutional law, and by it we may test the authority and binding force of legislative enactments."

In State v. Haun, 61 Kan. 146, 59 Pac. 340, 47 L. R. A. 369, the court lays down the proposition that "equal protection of the laws means equal exemption with others of the same class from all charges and burdens of every kind." The court, in Cotting v. Kansas City Stock Yards Co., 183 U. S. 79, 112, 22 Sup. Ct. 30, 43, 46 L. Ed. 92, after declaring that, "If once the door is opened to the affirmance of the proposition that a state may regulate one who does much business, while not regulating another who does the same but less business, then all significance in the guaranty of the equal protection of the laws is lost, and the door is opened to that inequality of legislation which Mr. Justice Catron referred to in the quotation above made," says:

"We think, therefore, that the principle of the decision of the Supreme Court of Kansas in State v. Haun, supra, is not only sound, but is controlling in this case, and that the statute must be held unconstitutional, as in conflict with the equal protection clause of the fourteenth amendment."

We are unable to distinguish the principle of this case from that of the case at bar, if the statute is to have the construction contend-·ed for by the respondent. The common-law cause of action rests, not upon whether the party is an employé or employer, not whether he resides in this locality or that, but upon the broad ground of an injury sustained through a wrongful or negligent act or omission on the part of another. This cause of action rests upon this same broad basis in every part of the state, and it is the foundation on which rests the new cause of action created by section 1902 of the Code of Civil Procedure, and in a measure of the new cause of action created by chapter 600, p. 1748, of the Laws of 1902. The cause of action being the same in all parts of the state to every individual, and every member of this state being guarantied against being "deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers," it follows, under the definitions which we have quoted, that the remedy for this wrong must be the same to every individual in every part of the state; and whether he is a master or a servant, whether he is white or black, whether he lives in the borough of Brooklyn or the village of Port Chester, this right may be taken from him only by a general law operating equally upon every other citizen or inhabitant of the state. "This statute," say the court in the case of Cotting v. Kansas City Stock Yards Co., 183 U. S. 112, 22 Sup. Ct. 43, 46 L. Ed. 92, "is not simply legislation which in its indirect results affects different individuals or corporations differently, nor with those in which a classification is based upon inherent differences in the character of the business, but is a positive and direct discrimination between persons engaged in the same class of business, and based simply upon the quantity of business which each may do. If such legislation does not deny the equal protection of the laws, we are unable to perceive what legislation would." So, if legislation may step in and say that a man who is an employé, who is injured under circumstances giving him a common-law right of action, may be compelled to give a notice within 120 days of such accident, while a like condition is not required of his neighbor who may be injured in the same accident, the foundation of the right resting upon the same broad principles, there is little of efficiency in constitutional guaranties. To make this proposition more clear and certain, it may be proper to refer to yet other constitutional provisions which would seem to demand that there be no discrimination as between individuals in the protection of their rights. By the provisions of section 2 of article 6 of the Constitution of the United States it is provided that "this Constitution and the laws of the United States, which shall be made in pursuance thereof, * * * shall be the supreme law of the land"; and the fourteenth amendment makes the sweeping provision: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Whatever differences of opinion may exist as to what are in fact the "privileges and immunities of citizens

of the United States," it can hardly be doubted that those rights guarantied by the "supreme law of the land" are embraced within the phrase, and these privileges and immunities are not to be abridged, are not to be reduced or contracted; are not to have conditions imposed which are not consistent with the "equal protection of the laws." In speaking of these provisions of the fourteenth amendment in Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 357, 359, 28 L. Ed. 923, cited with approval in Cotting v. Kansas City Stock Yards Co., supra, it was said that it was "undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to · pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs and the enforcement of contracts; that no impediment should be imposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses."

These high purposes of the federal Constitution, as well as those of our own, are defeated under the interpretation of the statute which requires persons with a common-law right of action to submit to conditions which are not required of others similarly situated; which makes a condition precedent for one citizen to maintain his rights which is not required of another, whose cause of action is based upon the same wrongful or negligent conduct on the part of an individual or corporation. On the other hand, if we confine the restriction to the new cause of action created, imposing the burden as the condition of the new right, the legislation does not come into conflict with any established rule of construction, or with any of the provisions of the Constitutions of the state or of the United States. It being our duty to support the action of the Legislature where it is acting within the legitimate scope of its powers, and "no duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which is the foundation of free government" (Gulf, Colorado & Santa Fé Ry. v. Ellis, 165 U. S. 150, 160, 17 Sup. Ct. 255, 41 L. Ed. 666, cited in the Cotting Case, supra), we are constrained to disagree with the construction put upon the act of 1902 (chapter 600, p. 17), and to hold that the judgment should be reversed, and the plaintiff be allowed to proceed with the trial of his common-law cause of action.

The judgment appealed from should be reversed, and a new trial ordered; costs to abide the event. All concur, except that GOOD-RICH, P. J., and BARTLETT and HIRSCHBERG, JJ., express no opinion as to the second point discussed.