### ROWLETTE v. ROTHSTEIN DENTAL LABORATORIES, Inc.

### No. 5599.

Court of Appeals of the District of Columbia.

Argued Dec. 8, 9, 1932.

Decided Jan. 16, 1933.

Robert H. McNeill and Herbert S. Ward, both of Washington, D. C., for appellant.

Morris Simon, Lawrence Koenigsberger, Eugene Young, and Selig C. Brez, all of Washington, D. C., for appellee.

Leo A. Rover, U. S. Atty., of Washington, D. C., amicus curiæ.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This appeal challenges the constitutionality of the Longshoremen's and Harbor Workers' Compensation Act as made applicable to the District of Columbia by Act of Congress approved May 17, 1928 (Tit. 19, § 11, D. C. Code 1929, 45 Stat. 600, c. 612, § 1; title 33, USCA § 901 et seq.). The contention is that the act is in violation of the Seventh Amendment of the Federal Constitution, in that it deprives the employee of his common-law right to jury trial for the recovery of damages against his employer. Plaintiff below brought an action at law against his employer for personal injuries received in the course of his employment in the District of Columbia, alleging negligence on the part of the employer as the proximate cause of his injury. Defendant below had secured payment of compensation to his employees under section 32 of the act (33 USCA § 932), and therefore demurred to the declaration on the ground that plaintiff's sole and only relief was under the provisions of the Compensation Act. The demurrer was sustained, and this appeal was taken.

The original Longshoremen's Act was approved March 4, 1927, and a year later it was made applicable to certain employments in the District of Columbia. By its terms the employer is made liable for the payment of certain prescribed compensation to his employee irrespective of fault. The liability is exclusive, and the compensation is fixed in the case of permanent, partial, or total disability, and in the case of death is based upon the average weekly wage. The act, as applicable to maritime workers (while engaged in work on the navigable waters of the United States), was held to be constitutional in Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598. On behalf of the respondent it is urged that the Compensation Act, in those cases in which it applies, abolishes the common-law right of action by employee against employer in cases of personal injury or death, and substitutes a new statutory right based wholly upon the fact of injury arising out of and in the course of the employment, that this Congress may do, and that, the substituted right being unknown to the common law, the denial of trial by jury does not constitute a violation of the Seventh Amendment.

If the premise be granted that by establishing a substituted right, equitable in its nature and unknown to the common law, Congress may deny the right to jury trial in its enforcement without offending the Seventh Amendment—and we think it must be—the single question then for decision is the right of Congress to abolish the common-law right of action against the employer for personal injury to the employee, and, if it has the right, whether it is absolute or conditional.

In the establishment of laws for the District of Columbia, Congress has all the powers of a state, so long as such laws do not contravene some provision of the Constitution. But appellant insists that this is just what the act in question does. We think not.

A compensation act was first passed in England in 1897. In 1908 Congress passed such an act (35 Stat. 556) confining, however, its benefits to certain government employees. Since then compensation laws more or less similar in aim and outline have been enacted and are in effect in all, or nearly all, the states. The underlying purpose of all such laws is to supply an omission of the common law to provide a remedy for accidental injury where the employer is not at fault. The doctrines of fellow servant, assumption of risk, and contributory negligence, which the courts had universally held to apply in personal injury cases, were said to be incompatible with the public interest. Experience had demonstrated that the frequent injury to workmen in modern industry must, in the nature of things, be anticipated. The disastrous consequences which follow were recognized as a burden upon the public and therefore as a matter of common interest and concern, and so it came to be generally considered that loss from death or injury sustained under such circumstances was a proper subject of reasonable legislative regulation, and in that aspect might properly be made to constitute a part of the cost of the industry, and to be assumed by it.

The evolution of labor from servitude has been slow but constant. In England up to the year 1799 the colliers, coal heavers, and salters were in a state of practical slavery; being bound to the mine or salt works for life and transferable with them when the original master had no further use for them. In

many European countries the farm laborer resided on the land of the master and could not remove therefrom, and, if he escaped, could be forced to return, and his share of the crop could only be sold with his master's consent. In France, there was, up to the time of the Revolution, a custom of banalities which forbade the tenant to bake in his oven, to make wine at his own press, or to sell in the public market. De Toqueville, describing this condition, says the peasant or laborer could not cross a river without paying to some nobleman a toll. He could not take his produce to market until he had bought leave to do it, and when on his return home he wants to consume there the surplus of his produce grown by his own hand and under his own eye, he finds he must send his grain to their mills to be ground and to their ovens to be baked. The American colonists in their long contests against the evils that attended their colonial condition and in their struggle for independence sought to establish in this country a republican government grounded on the right of every citizen to perform the duties of a citizen whether derived from the right to cultivate the ground, carry on a trade, or maintain himself and his family by engaging in industry.

However, in the subsequent growth of the country, the spread of industry through modern inventions and its monopolization through the accumulation and consolidation of capital, its use of dangerous and hazardous instrumentalities with its constantly mounting toll of human life and limb, made it obvious that the employee in the pursuit of a living must expose himself "to death or to physical injuries more or less disabling with consequent impoverishment, partial or total," to himself or those dependent on him, and that this condition tended to increase pauperism, misery, and crime. These considerations and the danger to the state of their continuance paved the way to the enactment of compensation laws. And the courts, in declaring them valid, have uniformly held that immunity from liability when not at fault is not, under all circumstances, an inherent right but is subject, as between employer and employee, to the paramount right of the public, because in the common weal there is an obligation to avoid pauperism and its attendant evils, and this obligation jus-

tifies the state in imposing the cost of an accident upon the industry in which the loss arises, or, expressed in slightly different form, that in the conditions named there may well be enforced subjection of interests that are individual or partial, to the welfare of the state. On these or similar grounds compensation laws have been uniformly declared valid, and the Supreme Court, in sustaining their constitutionality as against attack under the Fourteenth Amendment, has upheld the authority of states to abolish common-law rules affecting the employer's liability for personal injury to the employee. New York C. R. Co. v. White, 243 U. S. 188, 200, 37 S. Ct. 247, 250, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629. And in Mountain Timber Co. v. Washington, 243 U. S. 219, 235, 37 S. Ct. 260, 264, 61 L. Ed. 685, Ann. Cas. 1917D, 642, where the Seventh Amendment was, as it is here, invoked to invalidate a state act, binding on the federal courts within its territorial limits, it was held not in point, because "as between employee and employer, the act abolishes all right of recovery in ordinary cases, and therefore leaves nothing to be tried by jury."

That this is also true of the act under consideration is undeniable, for in extending the provisions of the act to certain employments in the District of Columbia, Congress has abolished the rule, as to which the Supreme Court has said, "No person has a vested interest * * * entitling him to insist that it shall remain unchanged for his benefit" (White Case, supra), and has established in its stead a new and better system in which no jury is required. That Congress has such right we think is beyond question, where, as here, the abolition of the one right is accompanied by the creation of another. The object, as we have seen, is to protect society from pauperism by preserving the home and the family, and thus performing a duty for which governments are formed. The act in itself is not arbitrary. It is just, both to the employer and to the employee, and accomplishes in most cases a fair settlement of a vexing problem deeply affecting the common welfare.

In these circumstances the decision of the lower court should be, and is, affirmed.

Affirmed.