## LINDNER et al. v. DISTRICT OF COLUMBIA.

### No. 50.

Municipal Court of Appeals for the District of Columbia.

March 29, 1943.

Mark P. Friedlander, of Washington, D. C., for appellants.

Glenn Simmon, Asst. Corp. Counsel, of Washington, D. C. (Richmond B. Keech, Corp. Counsel, of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

During the fiscal years beginning July 1, 1937 and July 1, 1938 appellants were engaged in the business of constructing and selling houses in the District of Columbia, and thus were subject to the business privilege tax imposed by the District of Columbia Revenue Act of 1937, amended by the Act of May 16, 1938. Appellants filed returns as required by law; assessments were made on the basis of such returns; and the taxes so assessed were paid by appellants. Early in 1940 additional assessments of taxes for each of the years were made and bills therefor presented to appellants. They refused to make payment and on the 23d day of January, 1942 the District seized by distraint the sum of $896.81, on deposit in a local bank in the name of appellants, in payment of the additional assessments penalties and interest. Appellants brought action to recover back the sum so seized, contending that the additional assessments were invalid. Judgment was entered in favor of the District.

Two questions are presented by this appeal: (1) Did the trial court have jurisdiction to entertain the action; and (2) were the additional assessments valid?

## I.

Appellee contends the Municipal Court was without jurisdiction because of appellants' failure to exhaust their administrative remedy by an appeal to the Board of Tax Appeals for the District of Columbia, insisting such remedy must be exhausted before challenging the tax in the Municipal Court or any court. Appellants say the tax was void and for that reason contend it was not necessary that they first pursue their administrative remedy.

We think the question involves more than the necessity of pursuing an administrative remedy. The real question is whether the remedy before the Board of Tax Appeals is an exclusive one.

The Board of Tax Appeals was created by Title IX of the Act of May 16, 1938, D. C.Code 1940, § 47—2401 et seq. Section 3 of that title, as amended by the District of Columbia Revenue Act of 1939, D.C. Code (1940) 47—2403, provides: "Any person aggrieved by any assessment by the District against him of any personal-property, inheritance, estate, business-privilege, gross-receipts, gross-earnings, insurance-premiums, or motor-vehicle-fuel tax or taxes, or penalties thereon, may, within ninety days after notice of such assessment, appeal from such assessment to the board, provided such person shall first pay such tax, together with penalties and interest due thereon, to the collector of taxes of the District of Columbia under protest in writing. The mailing to the taxpayer of a statement of taxes due shall be considered notice of assessment with respect of such taxes. The board shall hear and determine all questions arising on said appeal and shall make separate findings of fact and conclusions of law, and shall render its decision thereon in writing. The board may affirm, cancel, reduce, or increase such assessment."

Section 4 of Title IX, D.C.Code (1940) 47—2404, authorizes review of the decisions of the Board by the United States Court of Appeals for the District of Columbia, and provides: "Upon such review the court shall have the power to affirm, or if the decision of the board is not in accordance with law, to modify or reverse the decision of the board, with or without remanding the case for hearing, as justice may require. The court shall have the exclusive jurisdiction to review the decisions of the board, and the judgment of the court shall be final, except that it shall be subject to review by the Supreme Court of the United States upon certiorari in the manner provided in section 240 of the Judicial Code, as amended [section 347, Title 28, U.S. Code]."

Appellants could have paid the taxes here in question and by appeal to the Board of Tax Appeals raised the same question of the validity of the assessment here raised. If decided adversely to them, they could have by appeal to the United States Court of Appeals presented the question to that

court. Had appellants appealed to the Board, the Board would have acquired exclusive jurisdiction, subject to review only by the United States Court of Appeals. Hence, appellee's argument that appellants should have gone to the Board before coming to the Municipal Court is not convincing, because going to the Board would have effectively closed the door to the court. For that reason, we must first consider the question whether the remedy before the Board is an exclusive one. It has not heretofore been decided, though it was raised by the United States Court of Appeals.[1]

■ The Board of Tax Appeals is an administrative agency established to furnish a more efficient, speedy and less expensive method of determining the validity of assessments.[2] It is quasi-judicial in nature, but it is not a court.[3]

■ However, the Act establishing the Board did more than create an administrative remedy. It created new rights for the taxpayers. Prior to the Act, the taxpayer was subject to the common law rule prohibiting him from challenging the validity of a tax unless he had paid the same involuntarily.[4] And the rule is that a mere statement the tax is being paid under protest is not sufficient to make it an involuntary payment.[5] The payment must have been made under compulsion, as, for example, to prevent immediate seizure of goods or arrest of person.[6] Having made involuntary payment, the taxpayer's remedy was by an action at law.[7]

■ Since passage of the Act creating the Board of Tax Appeals the taxpayer, desiring to contest the validity of an assessment, is not compelled to withhold payment until the collector threatens dire results and then make payment with the possibility the court may still hold the payment voluntary and deny a recovery on that ground.[8] He may now pay his tax under protest and appeal to the Board within ninety days after notice of assessment. Thus a taxpayer making a voluntary payment is now given the right to contest the validity of the tax. This is a new right created by the Act and the remedy provided by the Act is the only remedy for such right.[9]

■ But, as previously said, a taxpayer who paid involuntarily had a common law right to sue for the recovery of the tax paid. Does the Act take that right away and limit his right to the statutory proceeding before the Board? The Act does not in express terms do so. Had Congress intended the remedy before the Board to be exclusive it could have made that intention clear. Congress may provide an exclusive administrative remedy for recovery of illegally collected taxes,[10] or abolish a common law right of action and substitute in its place a new statutory right, as it did in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901

[1] In a footnote to the decision in Sherwood Bros., Inc., v. District of Columbia, 72 App.D.C. 155, 158, 113 F.2d 162, 165, the court said: "It is not necessary to decide whether the remedy before the Board is exclusive, or either alternative or cumulative to the suit at law. The statute creating the administrative remedy remains open for construction upon that question."

[2] Sherwood Bros., Inc., v. District of Columbia, supra.

[3] Watrous et al. v. District of Columbia, App.D.C., 135 F.2d 654, decided March 9, 1943.

[4] Panitz v. District of Columbia, 72 App.D.C. 131, 112 F.2d 39.

[5] Blanks v. Hazen, 66 App.D.C. 118, 85 F.2d 284.

[6] District of Columbia v. Glass, 27 App. D.C. 576.

[7] Maryland & Virginia Milk Products Ass'n v. Hazen, 66 App.D.C. 136, 85 F. 2d 302.

[8] The question of what constitutes sufficient duress to make a payment involuntary has been a troublesome one for the courts and especially for the taxpayers, and "courts sometimes, perhaps, have been a little too slow to recognize the implied duress under which payment is made." Atchison, etc., R. Co. v. O'Connor, 223 U.S. 280, 286, 32 S.Ct. 216, 217, 56 L.Ed. 436, Ann.Cas.1913C, 1050.

[9] "Where the statute creating the right provides an exclusive remedy, to be enforced in a particular way, or before a special tribunal, the aggrieved party will be left to the remedy given by the statute which created the right." Galveston, etc., R. Co. v. Wallace, 223 U.S. 481, 490, 32 S.Ct. 205, 206, 56 L.Ed. 516. See, also, Dollar Savings Bank v. United States, 19 Wall. 227, 238, 22 L.Ed. 80.

[10] Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143.

et seq.[11] But unless so declared in express terms or by necessary implication, a statutory remedy is merely cumulative and does not abolish an existing common law remedy.

In Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 437, 27 S. Ct. 350, 354, 51 L.Ed. 553, 9 Ann.Cas. 1075, the Supreme Court said: "We concede that we must be guided by the principle that repeals by implication are not favored, and, indeed, that a statute will not be construed as taking away a common-law right existing at the date of its enactment, unless that result is imperatively required; that is to say, unless it be found that the pre-existing right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory."

The principle was stated in Rosin v. Lidgerwood Mfg. Co., 89 App.Div. 245, 86 N.Y.S. 49, 51, thus: "To the extent that this statute creates a new right and regulates or creates a remedy for such new right, there is no doubt that the remedy or its regulation is exclusive. * * * So, where a remedy existed at the common law for a wrong or injury against which a remedial statute is directed, if such statute provides a more enlarged or summary or more efficient remedy for the party aggrieved, but does not in terms or by necessary implication deprive him of the remedy which existed at common law, the statutory remedy is considered as merely cumulative, and the party injured may resort to either at his election."

The foregoing principle has been applied in a variety of situations.[12]

■ The express words are absent from the statute and we find no necessary implication. We have found nothing in the legislative history of the Act indicating an intent by Congress that the remedy before the Board is exclusive of the common law remedy.[13]

■ A rule of construction often applied in cases of this nature is that the statutory remedy is but cumulative unless it is entirely adequate for protection of

---

[11] Rowlette v. Rothstein Dental Laboratories, 61 App.D.C. 373, 63 F.2d 150; South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L. Ed. 732.

[12] Statutory provisions as to solemnizing marriages, not containing words of nullity, are directory merely, and do not affect the validity of common-law marriages. "No doubt, a statute may take away a common-law right; but there is always a presumption that the legislature has no such intention, unless it be plainly expressed." Hoage v. Murch Bros. Construction Co., 60 App.D.C. 218, 220, 50 F.2d 983, 985.

A statutory remedy for enforcement of water rights does not abolish the common law remedy. "A special statutory remedy is not exclusive, unless such intention is clearly manifest. It is merely cumulative, unless a contrary intention clearly appears, and it cannot be otherwise than cumulative, unless it is entirely adequate for the protection of pre-existing rights." Tucker v. Missoula Light & Railway Co., 77 Mont. 91, 98, 250 P. 11, 14.

A statutory remedy where property is sold and title reserved does not abolish pre-existing remedies. "A statute prescribing a new remedy for an existing right should never be construed to abolish a pre-existing remedy in the absence of express words or necessary implication."

Philip Levy v. Davis, 115 Va. 814, 821, 80 S.E. 791, 794.

A statutory action of "forcible entry and detainer" is not an exclusive remedy substituted in the place of ejectment but merely an additional method of procedure. Pioneer Coal Co. v. Bush, D.C.E. D.Ky., 16 F.Supp. 117.

The creation of an administrative remedy does not necessarily impair a previously created judicial remedy. Carriso, Inc., v. United States, 9 Cir., 106 F.2d 707.

[13] The Act of May 16, 1938, creating the Board of Tax Appeals, authorized a survey and study of the entire tax structure of the District of Columbia. The published study, dated January 13, 1939, (76th Congress, 1st Session, House Document No. 108) at page 23, states: "Although it has not been definitely settled, it appears that the Board has concurrent jurisdiction with the District Court of the United States for the District of Columbia. Suits to recover taxes paid may also be instituted in the District Court. The Board of Tax Appeals is merely a quasi-judicial body established for the convenience of the taxpayer in these matters. In cases where 90 days have expired and appeals can therefore not be taken to the Board, the taxpayers still have recourse to the District Court of the United States for the District of Columbia."

existing rights. The remedy before the Board, if exclusive, would have the effect of limiting the common law right of one who has paid the tax involuntarily. A condition precedent to appeal to the Board is payment within ninety days after receipt of notice of assessment.[14] If one is unable to pay within the time limited, his right of appeal is lost. Thus, one unable to pay within the ninety day period and who is thereafter compelled to make an involuntary payment would be deprived of his common law right of an action at law if the remedy before the Board is exclusive.[15] Actually, involuntary payment within the ninety day period will rarely occur.

Section 6 of Title IX,[16] [D.C.Code (1940) 47—2406], seems, at least impliedly, to recognize that those paying involuntarily and having a common law right of action, will have a choice of remedies, for that section gave taxpayers who had acquired such a right previous to the Act, the choice of pursuing the administrative remedy before the Board.[17]

■ Our conclusion is that as to a taxpayer paying voluntarily the Act created a new right and the remedy provided by the Act is exclusive, but as to one paying involuntarily within the meaning of the common law, as is the case with appellants, the remedy before the Board is cumulative and such taxpayer may elect between his remedy before the Board and his common law remedy in the court.

## II.

The business privilege tax, "a [gross receipts] tax upon the privilege of engaging in business in the District [of Columbia] ",[18] was first imposed by Title VI of the District of Columbia Revenue Act of 1937, 50 Stat. 688, and was extended, and in some respects amended, by the Act of May 16, 1938, 52 Stat. 363. The District of Columbia Revenue Act of 1939, D.C. Code 1940, §§ 47—134, 47—1501 et seq. extended the laws authorizing imposition of the tax for certain purposes, including assessment and collection, in connection with taxes accrued or due prior to July 1, 1939.

Section 4, originally and as amended, 50 Stat. 689, 52 Stat. 366, required those subject to the tax to file on a prescribed form a statement under oath showing gross receipts of the taxpayer during the preceding calendar year. The same section authorized the Commissioners or their representatives, "for the purpose of ascertaining the correctness of any return filed hereunder, or for the purpose of making a return where none has been made," to examine any books, records, etc. bearing on the matter required to be included in the return, to require production of such books, records, etc., and to require testimony under oath respecting the same.

Section 8, originally and as amended, provided: "If a return required by this title is not filed, or if a return when filed is incorrect or insufficient and the maker

---

[14] Rynex v. District of Columbia, 72 App.D.C. 386, 114 F.2d 842.

[15] Taking away the common law remedy without the substitution of a fair and adequate statutory remedy would raise a constitutional question. See Security National Bank v. Young, 8 Cir., 55 F.2d 616, 84 A.L.R. 100, certiorari denied 286 U.S. 551, 52 S.Ct. 502, 76 L.Ed. 1287; Ward v. Board of County Com'rs of Love County, 253 U.S. 17, 40 S.Ct. 419, 64 L. Ed. 751; Carpenter v. Shaw, 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478; Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S. Ct. 816, 81 L.Ed. 1143.

[16] "Sec. 6. Any taxpayer who shall have paid within three years immediately preceding the approval of this Act [District of Columbia Revenue Act of 1937] any tax to the District involuntarily, and under circumstances which according to law would entitle such taxpayer to the right to sue at law for the recovery of such tax, may within ninety days from the approval of this Act [May 16, 1938], appeal from the imposition of such tax in the same manner and to the same extent as set forth in sections 3 and 4 of this title [sections 47—2403, 47—2404]."

[17] We think it is significant that the District of Columbia Income Tax Act, approved July 26, 1939, which followed the expiration of the business privilege tax, in Title II, Section 34 [D.C.Code (1940) 47—1534], permitting filing of claims for refunds and an appeal to the Board within ninety days after disallowance of such claim, provides: "The remedy provided to the taxpayer under this section shall not be deemed to take away from the taxpayer any remedy which he might have under any other provision of law; but no suit by the taxpayer for the recovery of any part of such tax shall be instituted in any court if the taxpayer has elected to file an appeal in accordance with this section."

[18] Neild v. District of Columbia, 71 App.D.C. 306, 110 F.2d 246, 253.

fails to file a corrected or sufficient return within twenty days after the same is required by notice from the assessor, the assessor shall determine the amount of tax due from such information as he may be able to obtain, and, if necessary, may estimate the tax on the basis of external indices such as number of employees of the person concerned, rentals paid by him, stock on hand, and other factors. The assessor shall give notice of such determination to the person liable for the tax."

Under the 1937 law, the assessor's determination could be appealed to the Board of Equalization and Review, whose decision could be reviewed by the District Court of the United States for the District of Columbia. Under the 1938 law the assessor's determination could be appealed to the Board of Tax Appeals.

In this case the assessing authorities apparently considered the two returns filed by appellants to be incorrect or insufficient, and an examiner called upon appellants and examined certain records kept by them, and from such examination determined that appellants' gross receipts were substantially greater than reported on the returns. The examiner made a report to the assessor's office and thereafter the additional assessments were made.

When the assessor's office determined from the examination of appellants' books and records, that the returns were incorrect or insufficient, no notice was given by the assessor to appellants to file corrected or sufficient returns in accordance with the provisions of Section 8; but the assessor proceeded to determine and assess the additional taxes. For this reason appellants contend the assessments were invalid. We think this contention is sound.

■ When the assessor's office questioned the correctness of the returns, it was authorized by Section 4 to make an examination to ascertain their correctness. Having ascertained to its satisfaction that the returns were incorrect, it was authorized by Section 8 to require the appellants to file corrected or sufficient returns within twenty days. In the event such returns were not filed within the time limited, the assessor was then authorized to determine the tax due from such information as he could obtain. Such determination would fix the tax, subject to appeal to the Board of Tax Appeals. But we do not think the assessor could ignore the provisions of Section 8, as he did in this case, and determine the tax without giving the taxpayer notice and opportunity to file corrected or sufficient returns.

■ The appellee, admitting no notice was given in accordance with Section 8, relies on Section 11 as authorizing the procedure followed.[19] We are of opinion the general terms of Section 11 cannot override the specific provisions of Section 8. We cannot ignore Section 8. Congress enacted it and we must give effect to it. Sections 8 and 11 were both in the 1937 Act and both were amended by the 1938 Act, but that part of Section 8 quoted in this opinion was reenacted in the 1938 law without change. Its provisions seem plain to us.[20] Section 11 relates to technical assessment and collection and not to determination of the amount of tax under Section 8.

The additional assessments here were similar to deficiency assessments of income tax.[21] We think our construction of Section 8 is not only required by its express language but is in accord with the general

---

[19] "Sec. 11. The taxes levied hereunder and penalties may be assessed by the assessor and collected by the collector of taxes of the District in the manner provided by law for the assessment and collection of taxes due the District on personal property in force at the time of such assessment and collection." 50 Stat. 691 and 52 Stat. 368.

[20] The District of Columbia Tax Study, supra, at page 48, referring to the business privilege tax, states:

"The Commissioners are authorized to examine any books, papers, or records bearing on matters required to be included in the return, and may summon a person to produce these books and papers and to testify regarding them.

"If an incorrect return or no return is filed the Assessor must give the taxpayer notice and if a corrected return is not filed within 20 days after such notice, the Assessor may determine from such information as he is able to obtain the amount which is due. He then gives notice to the person liable for the tax of the amount due and the tax thus becomes irrevocably fixed unless an appeal is taken."

[21] Appellants have argued that the action of the assessor constituted a reassessment, and that under the authority of Tumulty v. District of Columbia, 69 App. D.C. 390, 102 F.2d 254, and Hunt v. District of Columbia, 71 App.D.C. 143, 108 F.2d 10, reassessments are not permissi-

trend of taxing and tax laws generally. The District of Columbia Income Tax Act, section 31,[22] prohibits final determination of a deficiency assessment until notice has been given the taxpayer and an opportunity afforded him to file a protest and have a hearing. Similar procedure is provided in reference to Federal income tax deficiency assessments.

Appellee has argued that the procedure followed in this case was approved in Maryland & Virginia Milk Producers Ass'n v. District of Columbia, 73 App.D.C. 399, 119 F.2d 787. We do not so read that case. The additional assessment of business privilege tax there was computed by the assessor on figures furnished by the taxpayer in an explanatory statement attached to the return. There was no occasion to call for a corrected return. Furthermore, the question here presented was not raised in that case nor discussed in the opinion of the court.

We hold the assessor was without authority to determine the taxes due from information not apparent on the returns until he first gave the taxpayers notice to file corrected or sufficient returns. The additional assessments here made were therefore invalid.[23]

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed.

---

ble, though appellants concede their argument is weakened by the later decisions of Maryland & Virginia Milk Producers Ass'n v. District of Columbia, 73 App.D.C. 399, 119 F.2d 787, and Hecht Co. v. District of Columbia, App.D.C., 129 F.2d 353. In our view of the case, it is not necessary that we decide this question but we point out that the Tumulty and Hunt cases both concerned property taxes. The business privilege tax is an excise tax and not a property tax. The assessments involved were additional, supplemental or deficiency assessments and perhaps technically not reassessments.

[22] D.C.Code (1940) 47—1531.

[23] "A tax to be valid depends upon a particular statute creating liability and upon the proper procedural steps being taken by the taxing authorities." Tumulty v. District of Columbia, 69 App.D.C. 390, 400, 102 F.2d 254, 264. See, also, Powder River Cattle Co. v. Board of Commissioners, C.C., 45 F. 323, cited in Panitz v. District of Columbia, 72 App. D.C. 131, 112 F.2d 39.