National Bank of Commerce and Norris Building Company, Successor Trustees of the Trust Created Under the Deed of Trust Bearing Date of March 24, 1906, By and Between the Trustee Company and the Washington Trust Company of Seattle, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 64761, 66836.   Promulgated March 17, 1936.

H. B. Jones, Esq., for the petitioner.
*Elden McFarland, Esq.*, and *S. B. Anderson, Esq.*, for the respondent.

120

McMahon: These proceedings, duly consolidated for hearing and decision, are for the redetermination of deficiencies in income taxes in the amounts of $935.34 and $366.18 for the years 1929 and 1930, respectively.

Under date of March 24, 1906, the Trustee Co., a Washington corporation, of Seattle, Washington, entered into a "Deed of Trust" with the Washington Trust Co. of Seattle, a Washington corporation, which agreement (petitioner's Exhibit No. 1) is made a part of these findings of fact by reference. Under the deed of trust, the Trustee Co., as owner of the property therein fully described and designated as "Trustee Property No. 4", conveyed the same to the Washington Trust Co. and to its successors and assigns in trust "for the purpose of creating a Trust to sell the property * * * and apply the proceeds in accordance with this Deed of Trust, and for the purpose of creating Units to represent income and proceeds of said property * * *, and for the purpose of securing the performance and accomplishment of all and singular the things mentioned * * * to be done or accomplished", all as set forth in the deed of trust, subject to all the rights, interests, and powers reserved therein to the Trustee Co. and to the trusts therein declared by it and assumed on its part, and to the rights, interests, and powers herein reserved or granted to the "Investment Bond Owners and their successors", and to the powers and trusts of the Washington Trust Co., therein granted and imposed, all such reservations, trusts, and powers being subject to such limitations and conditions as thereinafter expressed or implied, "all subject, however, to the Trust to sell said property and apply the proceeds thereof as hereinafter set forth, such trust to sell and apply proceeds being paramount to all other provisions of this instrument." The deed of trust, in substance, further provided for and created 330 "equal Units" represented by 330 "Business Property Investment-Bonds", each representing one unit, with coupons attached covering a period of five years from date, providing for the payment of "quarterly dividends" and "annual surplus dividend" during such period, the terms of the investment bonds and coupons to be substantially as set forth in the deed of trust. The investment bonds were transferable by delivery unless registered in the name of the holder by entry in the books of the Trustee Co. or a duly qualified registry agent. The Trustee Co. in substance therein agreed, among other things, to manage, care for, and preserve the property with care and prudence according to its best judgment; to keep the same insured, such insurance to be made payable to the Washington Trust Co.; to collect all rents and earnings, distribute, and pay the same

in the following order of priority: (a) Expenses of insurance, taxes, special assessments, operating expenses and repairs, (b) quarterly dividends up to $12.50 per quarter on each unit outstanding, (c) annual surplus dividend or net income remaining after payment of expenses and quarterly dividends, two thirds of which to be paid pro rata on the 10th of December of each year to the owners of the units then outstanding and one third thereof to the Trustee Co.; to keep accounts of the property and the investment bond register separate and apart from all others and at any time permit any investment bond owner or the Washington Trust Co. to examine the same; and to mail annual statements of earnings and expenses of the property to the investment bond owners. The deed of trust further provides in substance that the Trustee Co. shall have the sole power to manage, lease, and operate the property; that the Trustee Co. upon the written approval of the Washington Trust Co. and 51 percent of the units outstanding may add to such property and make improvements thereon and issue and sell additional investment bonds at the rate of $1000 per unit to provide the funds therefor, all as more particularly provided for in such deed of trust; that the Washington Trust Co. and the Trustee Co. shall jointly have irrevocable power to sell and convey the property "at such time, in such manner, for such consideration and upon such terms, as they shall deem best, such consideration to be paid to the Washington Trust Company alone", the sale not to be complete nor shall a conveyance under any such sale be made until the owners of the investment bond representing not less than 51 percent of the units outstanding shall file their written approval thereof and deposit with the Washington Trust Co. not less than 51 percent of such units for cancellation and payment; that not less than 67 percent of the units outstanding may at any time direct the Washington Trust Co. and the Trustee Co. to sell the property as provided in the deed of trust; that the Washington Trust Co. "must sell the property as an entirety in one lot or parcel prior to the termination of the existence of the Trustee Company, but not more than one year prior thereto, for such price, upon such terms and in such manner as said Washington Trust Company shall deem best, such powers to be exercised by the Washington Trust Company alone"; that the Washington Trust Co. or the Trustee Co. shall not either jointly or separately mortgage the property; that no assessments shall ever be made upon any unit or investment bond owner for any purpose and no investment bond owner shall ever be or become liable personally in relation to any matters pertaining to the trust; that the Washington Trust Co. may resign or be removed by not less than 75 percent of the units and a successor thereto may be appointed by not less than 51 percent of the units; that the

Trustee Co. may be removed and a successor appointed by not less than 67 percent of the units; that the Washington Trust Co. or its successor shall be liable only for a willful breach of trust; and that the Trustee Co. and its successors shall be liable only for the exercise of reasonable care and shall not be liable for the consequences of any act, omission, or default of any agent or attorney selected by it with reasonable care.

Subsequent to the creation of such trust the Washington Trust Co. was succeeded as trustee under the above deed of trust by Dexter Horton Trust & Savings Bank, a Washington corporation, which was succeeded in or about February 1914 by the Northwest Trust & Safe Deposit Co., a Washington corporation, which changed its name to Northwest Trust & State Bank, and sold and transferred all its assets to the Marine National Bank of Seattle, a Washington corporation, which thereafter merged with the National Bank of Commerce, created and existing under the laws of the United States, which has ever since been and now is the trustee under the above deed of trust.

Under date of December 5, 1912, the Trustee Co. conveyed to the Norris Building Co., a Washington corporation, all its right, title, and interest in and to the property described in the above trust deed and designated as "Trustee Property No. 4" subject to the above deed of trust, and the Norris Building Co. thereupon succeeded the Trustee Co. under the deed of trust in the management and operation of this property.

The Norris Building Co. in 1912 had acquired 51 percent of the outstanding units. In 1929 and 1930 it owned 265.9 units of Trustee Property No. 4 and the Norris Safe & Lock Co. owned 56.8 units out of a total of 330 outstanding units. Both of these corporations were owned by William G. Norris, principal stockholder and president of both of them. There were about six or eight other unit holders.

The property described in the deed of trust was located in the city of Seattle, Washington, and had a frontage of 120 feet on Third Avenue South, a frontage of 204.77 feet on Washington Street, and a frontage of 142.46 feet on Prefontaine Place. The building thereon was a three-story concrete building with a basement under a small part of it. The building was named "The Exchange Building." Since 1912, the Norris Building Co., through William G. Norris, managed at its office the property here involved. It secured the tenants and made the leases. The number of tenants varied from year to year. Although there are only a few tenants in the building now, there have been a considerable number in the past. The Norris Building Co. has collected the rents since 1912, paid all the expenses, and made distribution of the net income to the unit holders. It kept separate books of account for such property and a list of the unit

holders. It also kept a separate bank account in the name of "Norris Building Co. Trustee" with the National Bank of Commerce, in which the rents or income from the property were deposited, and against which checks were drawn for the payment of taxes and all other expenses. The Norris Building Co. carried its own bank account in the First National Bank. The principal place of business of the trust is Norris Building Co., 114 Third Avenue South, Seattle, Washington.

The National Bank of Commerce merely held title to the property and took no part in the management or operation of the property.

The trust created by such deed of trust was in 1929 and 1930 an association taxable as a corporation.

The notices of deficiency were addressed to "Trustee Property #4, % Norris Building Co., 114 Third Avenue South, Seattle, Washington." In the original petitions filed with the Board the petitioner is designated therein as "Trustee Property #4." In such petitions it is alleged that the petitioner is a trust under the trust agreement of March 24, 1906. The petitions were verified by W. G. Norris, and it is stated in the verifications that W. G. Norris is the president of Norris Building Co., a Washington corporation, that such company is the manager of Trustee Property #4, the petitioner, that by reason of such relationship he is more closely associated with the affairs of the petitioner than any other individual, and that he is authorized to make the verification. The respondent moved for the dismissal of the petitions filed herein for the reason that they did not conform to Rule 5 (g) of the rules of the Board in that the petitions were verified by W. G. Norris, president of the Norris Building Co., and failed to show that the Norris Building Co. had been substituted as a fiduciary in the place of the original trustee under the deed of trust by virtue of which the petitioner was created a trust. Upon motion of petitioner to amend its petitions, the respondent's motions to dismiss were denied and the petitioner was granted leave to file amended petitions. Amended petitions were filed. Therein the petitioner was designated as "Trustee Property #4", and the petitions were verified by R. W. Sprague as trust officer of the National Bank of Commerce, a corporation organized and existing under the laws of the United States, the successor trustee referred to in the amended petitions, and states that as such trust officer he was authorized to verify them. The amended petitions in substance allege that the petitioner is a trust created under the deed of trust and that the National Bank of Commerce is the successor in trust of the Washington Trust Co.

Upon the foregoing facts, which we find, two questions are presented by the record. Although the parties seem to agree that the only question to be determined herein, as between them, is whether

the petitioner was, in the years in question, an association taxable as a corporation, the question of the Board's jurisdiction was suggested by the parties upon the hearing. Both parties on brief maintain that the Board has jurisdiction. As jurisdiction can not be conferred on the Board by the consent of the parties, *Accessories Manufacturing Co.*, 12 B. T. A. 467, it is necessary therefore, before considering the second question, to consider the question of our jurisdiction.

The deed of trust created a trust but it did not expressly provide a name therefor. It did, however, expressly designate the property conveyed in trust as "Trustee Property No. 4." The notices of deficiency addressed to Trustee Property #4 were received at the office of the Norris Building Co., the active trustee, where all the affairs of the trust were taken care of. No one was misled thereby. The record clearly shows that it was understood, by all parties, that the notices of deficiency dealt with the liability of the trust created by the deed of trust for income taxes. While not so expressly designated, both the Trustee Co. and the Washington Trust Co. of Seattle became trustees under the deed of trust, the former in effect the active or managing trustee in general and the latter the passive or holding trustee, as conceded in petitioner's brief. The National Bank of Commerce and the Norris Building Co. succeeded the original trustees, the former as holding trustee and the latter as active or managing trustee. The original petitions were verified by W. G. Norris, who managed the business and affairs of the trust as an officer of the Norris Building Co. The amended petitions were verified by R. W. Sprague, who, as officer or employee of the National Bank of Commerce or its predecessor in trust, had charge for it of the trust since 1918 in so far as action on its part was required under the deed of trust. Both appeared as witnesses and testified in behalf of the petitioner. There was no question on the part of anyone as to who the taxpayer was or would be if the Board approved the determination of the respondent.

In *Commissioner* v. *New York Trust Co.*, 54 Fed. (2d) 463; certiorari denied, 285 U. S. 556, the court stated that "the taxpayer", as referred to in the taxing statutes, has not a narrow or restricted meaning and that where the notice of deficiency, although addressed to a beneficiary, a minor, in care of a trustee, was received by the trustee and it apparently was fully understood as referring to the liability of the trust company as trustee, the method of addressing the notice of deficiency was a harmless error on the part of respondent where no one was misled by such method. It has been held by the Board that, where the person filing the petition has actual authority to represent the taxpayer against whom the deficiency has been determined and no one has been misled as to the liability asserted, the Board has jurisdiction even though the proceedings were instituted by persons other than those whose names appear in

the notices of deficiency. *Corinne Porter Scruggs, Administratrix*, 29 B. T. A. 1102, and cases cited. See also *Edwin W. Eisendrath et al., Executors*, 28 B. T. A. 744. In *Bankers Realty Syndicate* 20 B. T. A. 612, the Board held that the right of a taxpayer who has received a notice of deficiency to file his petition with the Board should not be defeated by reason of an improper caption, where, reading the petition as a whole, it is clear that it is the taxpayer who has petitioned. It is obvious here that the National Bank of Commerce and the Norris Building Co., or R. W. Sprague and W. G. Norris, representatives thereof respectively, understood that the designation, Trustee Property #4, embraced the trust created under the deed of trust, and that in instituting these proceedings they did so as officers of the trustees of such trust. The method of addressing the trust employed by respondent and the caption used in the petitions are harmless errors. The latter is subject to correction under our Rule 37 and has accordingly been corrected.

Whether both trustees should have either signed or verified the amended petitions need not be considered since it has been held that the verification of a petition is not a matter of jurisdiction. *Gibson Amusement Co.*, 22 B. T. A. 1212; *Monitor Amusement Co.*, 22 B. T. A. 1214; *Burnet* v. *First National Bank of Fresno*, 46 Fed. (2d) 631.

We hold that the Board has jurisdiction of the instant proceedings.

The second question to be considered is whether the trust in question is an association taxable as a corporation. The evidence discloses that no meetings of the certificate or unit holders were held, that the trust was without official name, that it kept no books in its own name, carried no bank account in its own name, had no employees and no officers, and carried on no business activities of any kind as a separate organization in corporate form. In *Helvering* v. *Combs*, 296 U. S. 365, wherein a similar question was involved, the United States Supreme Court held that, although the beneficiaries held no meetings and the trust had no office or place of business, no seal, bylaws, or official name, and the operations of the trustees were confined to the one lease they acquired, the trust therein involved was an association taxable as a corporation. In *Swanson* v. *Commissioner*, 296 U. S. 362, the United States Supreme Court held that the trust there involved constituted an association notwithstanding that the management and entire operation of the trust property, consisting of an apartment building, was committed to a firm engaged in the real estate business, which transacted all the business for the trustees or trust, including the distribution of the income to the beneficiaries. Here it is apparent that the plan set forth in the deed of trust was to provide a "medium for the conduct of a business and sharing its gains" and as such medium the trust created thereby

constituted an association taxable as a corporation. *Morrissey* v. *Commissioner*, 296 U. S. 344; *Helvering* v. *Coleman-Gilbert Associates*, 296 U. S. 369; *Helvering* v. *Combs, supra;* and *Swanson* v. *Commissioner, supra.*

While the trust deed provides that the "trust to sell and apply proceeds being paramount to all other provisions of this instrument", the trust in fact was not a mere liquidating trust as in *Dolese & Shepherd Co., Syndicate No. 3*, 30 B. T. A. 1171, cited by petitioner. There is no evidence that any attempts were made to sell the property from the time of the creation of the trust in 1906 to 1929 and 1930, the years involved herein. R. W. Sprague, who had charge of the trust as an officer of the National Bank of Commerce or its predecessor in trust since 1918 and was somewhat familiar with such trust prior to that time through clerical work, testified that he had made no effort to sell the property and that he did not know of any efforts at all having been made by anyone to sell the property. As stated in *Gardiner* v. *United States*, 49 Fed. (2d) 992, "the crucial test must be found in what the trustees actually do, and not in the mere existence of long unused broad powers" under the trust instrument.

We conclude that the petitioner was an association taxable as a corporation in the years here involved and the determination of the respondent is therefore approved.

*Decision will be entered for the respondent.*