**MARYLAND & VIRGINIA MILK PROD-
UCTS ASS'N, Inc., v. HAZEN et al.** *

No. 6614.

United States Court of Appeals of the
District of Columbia.

Decided June 15, 1936.

Rehearing Denied June 29, 1936.

John S. Barbour, of Fairfax, Va., for
appellant.

E. Barrett Prettyman and Chester H.
Gray, both of Washington, D. C., for ap-
pellees.

Before MARTIN, Chief Justice, and
VAN ORSDEL, GRONER, and STE-
PHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

This is an appeal from a decree of
the Supreme Court of the District of Co-
lumbia, dismissing appellant's bill of com-
plaint brought to enjoin the collection of
taxes assessed against certain of its in-
tangible property.

It appears that appellant, plaintiff be-
low, is a nonresident corporation, with-
out capital stock, organized under the Co-
operative Association Law of Maryland
(Code Pub.Gen.Laws 1924, art. 23, § 419
et seq., as amended). Its membership is
composed of some 1,200 dairy farmers,
none of whom is a resident of the Dis-
trict of Columbia. Plaintiff has a res-
ident agent for service of process in
Hyattsville, Md., but its main business of-
fice, where most of its directors' meet-
ings are held, and where its accounts and
records are principally kept, is located at
1726 Eye St. N. W., Washington, D. C.

By the terms of article XIV of the
by-laws of plaintiff association, all of its
members are required to "sign the stand-
ard marketing agreements current at the
time of their entrance as members here-
in, covering the milk produced or acquired
by or for them. * * *" The purpose
of the association is stated in its bill as
follows:

"The purpose of the Association is to
market all the milk produced by all its
members from day to day on the best ob-
tainable terms and distribute the net pro-
ceeds among its members in proportion
to the quantity and quality produced, less
only the actual cost of operating the As-
sociation."

In pursuance of this purpose, and act-
ing for and on behalf of its members who
have contracted with it under the "stand-
ard marketing agreements" referred to **in**

*Writ of certiorari denied 57 S. Ct. 29, 81 L. Ed. ——.

the by-laws, the plaintiff has, during the years 1926 to and including the year 1934 (the last year involved in this case), sold or disposed of within the District of Columbia from 76 to 88 per cent. of the milk produced by its contracting members. Plaintiff avers in its bill of complaint that:

"Payments for all such consignments are made directly to the producers by the consignees for the gross proceeds, less a charge fixed from time to time by the Association, based on total gallonage and estimated to be sufficient to pay the actual operating expenses of the Association, and to create and maintain a reserve fund hereinafter referred to as the revolving fund, and which, in fact, is a deposit with the Association of funds belonging to its various members, and is returned to its several members in cycles of six years from the year in which such retentions are made."

The bill further avers that the so-called "revolving fund" on July 1, 1933, amounted to some $400,000, which was invested in bonds and other intangible securities, which were kept in safe deposit boxes in Virginia. The bill also alleges that plaintiff "guarantees a continuous market for all milk produced by its members and guarantees payment therefor by the purchasers" and that plaintiff "guarantees payment for all milk sold," among other services performed by plaintiff for its several members. The "revolving fund" of plaintiff, the subject of the tax here in question, was accumulated by plaintiff from the excess charges made by it for the sale of the milk produced by its members over operating expenses, and the proportion of said "revolving fund" derived from business done in the District of Columbia is, except for the years 1927 and 1928, slightly in excess of the proportion that the milk sold by the plaintiff in the District of Columbia bears to the total volume of milk sold by plaintiff.

Defendants filed an answer, incorporating therein a motion to dismiss. At the instance of defendants the motion to dismiss was then called up for hearing and the lower court, after hearing argument of counsel, granted the motion to dismiss. From the order dismissing the bill, plaintiff prosecutes this appeal.

The grounds of the motion to dismiss were:

1. Plaintiff has an adequate and complete remedy at law by paying the tax and bringing suit at law to recover the same.

2. Suits for the purpose of restraining the assessment and collection of taxes are prohibited by section 3224 of the Revised Statutes of the United States.

■ It is urged that defendants waived their right to object to the jurisdiction of the equity court by moving to make the bill more specific. This contention might be sustained were the objection directed to the jurisdiction of the court over the parties, but the objection here is to the equitable jurisdiction of the court. This objection was properly taken by motion to dismiss, and it was not necessary that the motion be separately made. It can be incorporated, as was done in this instance, in the answer, as authorized by Equity Rule 28 of the Supreme Court of the District.

■ We do not agree with the contention of defendants that the court was prohibited from entertaining this suit by reason of section 3224, R.S.(26 U.S.C. § 1543 [26 U.S.C.A. § 1543]) which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." This section was intended to apply only to suits to restrain the assessment and collection of taxes levied by the United States. Alexandria Canal R. & Bridge Co. v. District of Columbia, 1 Mackey (12 D.C.) 217, 234; Craighill v. Van Riswick, 8 App.D.C. 185, 206, 207. It was taken from the Revenue Act of March 2, 1867 (14 Stat. 475), which related to the collection of the internal revenue of the United States and where special provision was made for the recovery of taxes wrongfully levied. This section, therefore, is not applicable to the present case, since the tax herein involved was not assessed by the internal revenue officers of the United States, but by municipal authorities, in order to defray the expenses of the District of Columbia, and would not, as such, become part of the general revenues of the United States.

Coming now to the question of the equitable jurisdiction of the lower court in the present case, we think that on this point alone the motion to dismiss was properly granted. While it is true that, where it becomes necessary to protect the

rights of citizens, whose property is taxed, against conditions which might produce irreparable injury, equity will intervene, we think there is nothing in the facts of this case to bring it within this rule. In the case of Dows v. Chicago, 11 Wall. 108, 110, 20 L.Ed. 65, the court said:

"It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public. No court of equity will, therefore, allow its injunction to issue to restrain their action, except where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or where the property is real estate, throw a cloud upon the title of the complainant, before the aid of a court of equity can be invoked. In the cases where equity has interfered, in the absence of these circumstances, it will be found, upon examination, that the question of jurisdiction was not raised, or was waived."

We do not think that plaintiff's claim of irreparable injury, which would be suffered by reason of the enforcement of this tax against it, is sufficient to justify equitable intervention. The averments of irreparable damage are, in substance, that the only property owned by plaintiff in the District of Columbia consists of "office furniture, fixtures, supplies, records, papers and books of account, etc., held in its office at 1731 Eye Street, Northwest, in the City of Washington, assessed at and of the value of $1,750"; that, though this property is indispensable to plaintiff, and of special value to it and no one else, it is of little intrinsic value, and, if sold for taxes, would have to be sacrificed and would bring a sum insufficient to pay such taxes, all to the great damage of plaintiff; and that such a proceeding "would so disrupt the business and affairs of the plaintiff and their proper conduct as to make the continuance by the plaintiff of its business as aforesaid impossible, all to the great and irreparable loss and damage of the plaintiff."

We think these allegations of irreparable damage are insufficient to bring this case within the equitable rule. Plaintiff is therefore relegated to its remedy at law, namely, an action for money had and received for taxes wrongfully exacted. In the State Tonnage Tax Cases, 12 Wall. 204, 209, 20 L.Ed. 370, the court said:

"Assumpsit for money had and received is an appropriate remedy to recover back moneys illegally exacted by a collector as taxes in all jurisdictions where no other remedy is given, unless the tax was voluntarily paid or some statutory conditions are annexed to the exercise of the right to sue, which were unknown at common law."

To establish plaintiff's right to the remedy at law, all that is necessary is that it pay the small assessment, amounting to $1,385.89, under such conditions as would enable it to sue for recovery, and then bring its action on the ground that the tax has been illegally collected. We think that this remedy completely meets this case.

The decree is affirmed, with costs.