**PEARSON, Collector of Taxes v.
LAUGHLIN.**

**No. 10800.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 20, 1951.

Decided June 14, 1951.

Harry L. Walker, Asst. Corporation Counsel for the District of Columbia, Washington, D. C., with whom Messrs. Vernon E. West, Corporation Counsel, Chester H. Gray, Principal Asst. Corporation Counsel, and George F. Lynch, Asst. Corporation Counsel, all of Washington, D. C., were on the brief, for appellant.

James J. Laughlin, Washington, D. C., pro se.

Before PRETTYMAN, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This case involves a suit to enjoin the District of Columbia Collector of Taxes from selling certain goods at a tax sale. A personal property tax was assessed against Mrs. Anna T. Keleher in respect of property in her possession, including all her furniture and household goods.[1] The tax not being paid, the property was seized by the Collector of Taxes, and in advertisements appearing on May 22, 23, and 24, 1950, was offered for public sale, at an auction to be held on June 1, 1950. On May 24, Mr. James J. Laughlin, who for several years had represented Mrs. Keleher as her attorney, wrote the Collector of Taxes a letter asserting two attorney's liens on the property and inquiring whether or not they would be recognized. In response, the Collector on May 26 wrote Mr. Laughlin, assuring him that the property would be sold subject to any outstanding liens. On May 26, Mr. Laughlin telephoned the Collector and asserted ownership of the property. On the same day, he began this suit for an injunction, based on his claim that he was the "owner" of the distrained property by virtue of assignments executed to him by Mrs. Keleher in 1948 and 1949.

On May 27, a Saturday and non-work day for the Collector's office, Mr. Laughlin telephoned the Collector at his home and requested that he open his office, accept checks from Mr. Laughlin for the amount of the taxes, and delay the moving of the property to the auction rooms in preparation for the sale.[2] The Collector refused, saying he could not hold up the proceedings and accept a check unless the check was certified; he suggested that Mr. Laughlin bring a certified check to the Collector's office on the next business day, Monday, May 29. Mr. Laughlin did not do that, but instead sought a series of restraining orders in the District Court which we need not here summarize.

The sale of the property was effectively stayed. The District Court, after a trial, concluded that Mr. Laughlin owned the property and granted the injunction sought, but conditioned it on the payment of $1,965.47, the amount of the taxes and penalties plus the cost of the distress proceedings up to and including May 27, 1950 (the date of Mr. Laughlin's telephone call to the Collector, offering to pay the amount assessed against Mrs. Keleher for taxes).

The case is here on appeal by the Collector, who contends that the evidence was not sufficient to justify the trial court's finding that Mr. Laughlin was the owner of the property, and, second, that the trial court should have conditioned the rendition of the judgment on payment by Mr. Laughlin of the taxes and all expenses instead of the limited amount indicated above. Mr. Laughlin did not take a cross-appeal and acquiesces in the condition imposed by the District Court. In his brief, however, he suggests that the tax assessments were void, citing Tumulty v. District of Columbia, 69 App.D.C. 390, 102 F.2d 254, in that the assessments were made against Mrs. Keleher, who in his view was not the owner of the property.

Mr. Laughlin's claim of title rests solely on the two assignments from Mrs. Keleher.[3] On their face, they purport to be

---

1. Pursuant to Title 47, § 1202 et seq., of the D.C.Code (1940 ed.).

2. It should be noted that the property was then stored in the warehouse of the Union Transfer & Warehouse Co., and was not in Mrs. Keleher's home, she having been evicted May 9, 1950.

3. The texts are as follows:
 "Assignment of Bill of Sale
 "I, Anna T. Keleher, of the City of Washington, D. C., in recognition of my indebtedness to James J. Laughlin in the sum of five thousand ($5,000) dollars, for legal services performed and

absolute transfers of the property. But, taking the testimony offered by Mr. Laughlin at full value, we do not consider that it establishes anything more than that the written assignments given to him by Mrs. Keleher in 1948 and 1949 were intended to secure the ultimate payment of his fees. The transaction was not intended as an outright sale but was, in Mr. Laughlin's own words, "something that would at least protect me in the litigation that I was going to begin."[4] At the time of the first assignment Mr. Laughlin had never seen the furniture. In a letter to the Collector of Taxes dated May 24, 1950 (two days prior to Mr. Laughlin's assertion of ownership), Mr. Laughlin referred to the property as "the furniture and personal effects of my client, Mrs. Anna T. Keleher," and said "I hold two attorney's liens, one dated May 15, 1948 and one dated January 17, 1949." These were the dates of the two absolute assignments, and it is clear that they are

the instruments to which the letter referred. The property was valued by Mr. Laughlin at roughly $10,000, whereas the liens here asserted were only for $5,675.48, primarily for services performed after the first assignment.[5] Mrs. Keleher retained possession and full use of the furniture and other property until she was evicted from her apartment. Thereafter it was stored in her name upon Mr. Laughlin's instructions.[6] Under these circumstances there can be no question but that the transaction was for security and not a sale.[7] It follows that Mrs. Keleher must be considered the "owner" for tax purposes under the law.[8]

This brings us to the question of the propriety of the injunction granted by the District Court. It is clear that before equity may intervene, the plaintiff in a case such as this must show (1) that there is some wrong being committed or about to be committed, and (2) that legal remedies are inadequate to give protection.[9] Here

---

to be performed, do hereby transfer, assign, bargain, sell, deliver and set over for and in consideration of the services heretofore mentioned, any and all furniture, fixtures, utensils, appliances of every kind character and description, now owned and belonging to me and located in my apartment, Apartment 318, Woodley Park Towers, to the said James J. Laughlin absolutely.

"It is understood, however, that this general assignment of all of my furniture excludes one marble statue of Aurora, Goddess of Dawn, together with pedestal, and it is further understood that this statue with pedestal is not intended by the parties to be transferred under the terms of this bill of sale.

Dated: May 15, 1948.

Anna T. Keleher.

Witness:

Bernadine Medina."

"Supplemental Assignment

"Reference is made to Assignment of Bill of Sale dated May 15, 1948.

"For and in consideration of the sum of $675.48 received in hand by Anna T. Keleher this 17th day of January, 1949, the said Anna T. Keleher does hereby transfer and sell unto James J. Laughlin the statue of Aurora, Goddess of Dawn, with pedestal, heretofore referred to in the original bill of sale mentioned above.

Anna T. Keleher.

Witness:

Bernadine Medina."

4. This refers to a series of suits conducted by Mr. Laughlin on behalf of Mrs. Keleher.

5. See supra, note 3.

6. It should also be noted that subsequent to the assignments the insurance carried on the property was continued in force without designating Mr. Laughlin as beneficiary. In litigation in which Mrs. Keleher was a party, and represented by Mr. Laughlin, the furniture was referred to, in the pleadings, as her property.

7. 4 Pomeroy, Equity Jurisprudence, § 1196 (5th ed. 1941); 3 Williston, Contracts, § 635 (Rev. ed. 1936) 1 Jones, Chattel Mortgages and Conditional Sales, §§ 22-24 (6th ed. 1933). Wyant v. Crittenden, 72 App.D.C. 163, 167 n. 3, 113 F.2d 170, 174 n. 3.

8. Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255, 60 S.Ct. 209, 84 L. Ed. 226. See, also, Commissioner of Internal Revenue v. H. F. Neighbors R. Co., 6 Cir., 81 F.2d 173; Wichita Term. El. Co. v. Commissioner of Internal Revenue, 10 Cir., 162 F.2d 513, 515; Land O'Lakes Dairy Co. v. Wadena County, 229 Minn. 263, 39 N.W.2d 164, affirmed 338 U.S. 897, 70 S.Ct. 251, 94 L.Ed. 552; In re Lawrence's Estate, 186 Misc. 631, 65 N.Y.S.2d 179.

9. " * * * while a court of equity would never entertain a bill to restrain the

there is no showing that either condition is satisfied.

 First, since Mr. Laughlin has but a lien on the property, his claims provide no basis for saying that the distraint is illegal. The District of Columbia Code directs that "if the said [personal property] taxes, with interest and penalties thereon, and the costs and expenses which shall have accrued thereon, shall not be paid before the date fixed for such sale, * * * the collector shall proceed to sell at public auction such property or interest therein or so much thereof as may be needed to pay such taxes, interest, penalties, and accrued costs and expenses of such distraint and sale." (D.C. Code (1940 ed.) § 47–1402.) This clearly gave authority for the sale. And, as we have pointed out, the Collector gave assurances that the property would be sold subject to any outstanding liens.[10] Accordingly, there is no ground for complaint in that regard.[11] One other contention appears—namely, that Mr. Laughlin's offer of May 27, 1950, to give the Collector two uncertified checks for the taxes should have been accepted, and now precludes sale of the property. We need not go into the matter in detail. The proffered checks were only in the amount of the taxes levied ($1,-628.70). There was apparently no offer to pay interest or expenses, though a substantial amount was then due on that score.[12] The offer was made on a non-business day, over the telephone, and while trucks and men were at hand to move the goods to the auction rooms. Having regard to the events of the preceding business week, during which Mr. Laughlin on Wednesday had asserted the existence of outstanding liens on property which he described as Mrs. Keleher's, and on Friday had asserted absolute ownership of the same property, without at any time during that week having made any tender of taxes whatever, we think that the Collector's refusal to stay the orderly course of collection proceedings was within his statutory authority.[13] His judgment in the matter appears confirmed by subsequent events—among other things, the failure of Mr. Laughlin to follow up his offer by presentation of a certified check on the following Monday, as the Collector suggested. Mr. Laughlin has failed to show that he was the victim of unlawful or unjustified action. On the contrary, "It is no more right to allow a party to blow hot and cold as suits his interests in tax matters than in other relationships." Alamo National Bank v. Commissioner of Internal Revenue, 5 Cir., 95 F.2d 622, 623.

 In the second place, suits for injunctive relief are seldom appropriate for the settlement of issues of the kind just

collection of a tax, except in cases where the tax was unauthorized by law, or where it was assessed on property not subject to taxation, it had never held that jurisdiction would be taken in those excepted cases, without special circumstances showing that the collection of the tax would be likely to produce irreparable injury, or cause a multiplicity of suits." City of Milwaukee v. Koeffler, 116 U.S. 219, 223–24, 6 S.Ct. 372, 374, 29 L.Ed. 612, quoting with approval a decision of the Supreme Court of Illinois. See, also, Maryland & Virginia Milk Products Ass'n v. Hazen, 66 App. D.C. 136, 85 F.2d 302, certiorari denied, 299 U.S. 566, 57 S.Ct. 29, 81 L.Ed. 417.

10. The Collector so advised Mr. Laughlin by the letter dated May 26, 1950, mentioned above.

11. Even if Mr. Laughlin were the owner of the property, there might be some question as to whether he would be entitled to an injunction. See District of Columbia Code, (1940 ed.) § 47–2410. Compare Ralston v. Heiner, 3 Cir., 24 F.2d 416; Excelsior Life Insurance Co. v. Thomas, D.C., 49 F.Supp. 90; Waldron v. Poe, D.C., 1 F.2d 932 (W.D. Wash.); Long v. Rasmussen, D.C.Mont., 281 F. 236; Markle v. Kirkendall, D.C. M.D.Pa., 267 F. 498; with Adler v. Nicholas, 10 Cir., 166 F.2d 674; Rothensies v. Ullman, 3 Cir., 110 F.2d 590; Lion Coal Co. v. Anderson, 10 Cir., 62 F.2d 325; Rosenthal v. Allen, D.C., 75 F. Supp. 879; Bigley v. Jones, D.C., 64 F. Supp. 389.

12. The trial court found that as of May 27, 1950, a total of $1,965.47 was due.

13. See D.C.Code (1940 ed.), § 47–1402, quoted above; also Bohler v. Callaway, 267 U.S. 479, 492, 45 S.Ct. 431, 69 L.Ed. 745; Leach v. Commissioner of Internal Revenue, 1 Cir., 50 F.2d 371; Washington Water Power Co. v. Kootenai County, 9 Cir., 273 F. 524.

discussed. Section 47–2410 of the District of Columbia Code provides: "No suit shall be filed to enjoin the assessment or *collection* by the District of Columbia or any of its officers, agents, or employees of any tax." That provision has not been cited to us and its effect in this case was not argued —perhaps because the District Court rested its decision on the ground that the wrong person's property was being held. We need not rely on it here. But we may point out that it is a strong expression of a long-established policy that the collection of taxes should not be impeded by judicial intervention and the exigencies of litigation.[14] There is no doubt that the Collector is under a duty to act fairly toward the public, to provide reasonable opportunity for the payment of taxes assessed, and to limit costs and expenses to what is reasonable and necessary. "Equitable and just results can be obtained in the levy and collection of taxes only if both the government and the taxpayer act in good faith and assume and maintain a consistent position toward each other." Phipps v. Commissioner of Internal Revenue, 10 Cir., 127 F.2d

214, 216. There are, however, well-channelized methods for seeking redress against the tax collector. And ordinarily relief is obtainable by injunctive proceeding only if these other methods are unavailing. There is nothing here to remove this case from the ordinary, or to require departure from well-settled principles. If the property is sold, Mr. Laughlin, who is the sole plaintiff here, cannot be substantially injured, as the property sold will still be subject to his liens. But more important, the property need not be sold. To avoid that result, all Mr. Laughlin or Mrs. Keleher need do is pay the taxes and costs incurred.[15] And the fact that they may consider the costs improper or excessive does not alone provide basis for injunctive relief,[16] at least where there is no showing that there are no appropriate remedies at law.[17]

As there has been no showing of wrongful action on the part of the Collector, nor of irreparable injury to the plaintiff, an injunction should not have issued. Accordingly, the judgment of the District Court is

Reversed.

14. See Dows v. City of Chicago, 1870, 11 Wall. 108, 20 L.Ed. 65. Cf. Internal Revenue Code § 3653(a), 26 U.S.C.A. § 3653(a), described as being declaratory of pre-existing equity rule against restraining collection of taxes solely on ground of illegality. Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422; Greener, The Injunction in Federal Tax Cases, 21 Tenn.L.Rev. 237 (April 1950).

15. Mr. Laughlin tendered a certified check for $1,965.47 to the Collector on August 10, 1950, in open court, pursuant to the final ruling of the District Court. This check, which included nothing in respect of expenses incurred subsequent to May 27, was refused by the Collector, who had previously taken an appeal to this court. The proffer of the check on August 10 cannot, of course, be decisive of the issues submitted to this court.

16. 51 Am.Jur. § 1052 and cases cited.

17. Cf. D.C.Code (1940 ed.) § 47–1407. See Maryland & Virginia Milk Products Ass'n v. Hazen, supra.