HEIRS OF MARCIAL SUÁREZ ET AL., Plaintiffs and Appellants, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 11813. Submitted March 26, 1959—Decided March 28, 1961.

312

*Víctor Gutiérrez Franqui, Luis F. Sánchez Vilella,* and *C. Morales, Jr.* for appellants. *Hiram R. Cancio, Secretary of Justice (José Trías Monge, former Secretary of Justice,* on the brief) and *J. C. Santiago Matos, Assistant Attorney General,* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The former Treasurer of Puerto Rico notified Marcial Suárez of an income tax deficiency for the years 1941 to 1946, both inclusive, amounting to the total sum of $369,576.67.

Marcial Suárez died on December 19, 1949, leaving as heirs his widow Encarnación Fuentes, his legitimate sons José and Juan Suárez Fuentes, and his grandson, a minor, Johnny Suárez Miranda. By a decision of February 6, 1950, the District Court, San Juan Part, named Juan Fuentes, his son and testamentary executor, as Judicial Administrator of the estate of the deceased Marcial Suárez.

The heirs, feeling aggrieved by the aforesaid deficiencies, requested a reconsideration thereof, and after having held various administrative hearings and conferences and having made negotiations with the agents of the Treasurer, an agreement was reached with the heirs regarding the amount to be paid for the deficiencies in each of the years already mentioned, which was reduced to $161,276.96.[1]

Regarding the year 1943, the Treasurer refused to admit that certain items claimed as losses of Marcial Suárez for that year were deductible, and that they consisted in debts allegedly worthless amounting to $100,164.33. The heirs signed printed forms provided by the Department of the Treasury, whereby they waived the right to the notice of the tax. Said waiver referred to the years 1941, 1942, 1944, 1945, and 1946. It was agreed that regarding the year 1943, the heirs would appeal to the corresponding court so that the latter would determine the validity of the deductions claimed by the heirs. As an inevitable consequence of this agreement, upon signing the waiver of the notice regarding the assessment of the tax of 1944, the heirs stated that said waiver was conditioned on the decision that might be rendered for the taxable year of 1943, since the Department of the Treasury would necessarily have to carry over to the year 1944 any excess in the losses of the year 1943, not credited to that year.

On October 18, 1951 the Treasurer notified the heirs of a deficiency in the income tax return filed by Marcial Suárez for the year 1943, of $25,721.29. This notice was made after administrative hearings were held and after the Treasurer had disallowed the deductions claimed [worthless debts] for said year by the heirs.

---

[1] The amounts were as follows:

```
"1941—$3,667.02............Receipt No. F-200012
"1942—  3,965.03............Receipt No. F-300012
"1943—25,721.29............Notice of Oct. 18, 1951
"1944—42,897.13............Receipt No. F-513421
"1945—35,363.36............Receipt No. F-611475
"1946—75,381.42............Receipt No. F-767535"
```

In November 1951 the heirs of Marcial Suárez filed a complaint before the former Tax Court against the Treasurer of Puerto Rico. All the heirs appeared in the aforesaid complaint, namely: the widow Encarnación Fuentes, the legitimate sons José and Juan Suárez Fuentes, the grandson Johnny Suárez Miranda, and also, the Judicial Administrator, Juan Suárez Fuentes. They alleged two causes of action. In the first, after stating the facts hereinbefore set forth, they alleged that the deficiency notified for the year 1943 "is unjust, arbitrary, and illegal, because the Treasurer of Puerto Rico refused to acknowledge certain items which will be hereinafter specified in Exhibit 'A' attached to this complaint, amounting to one hundred thousand, one hundred sixty-four dollars and thirty-three cents ($100,164.33), which items the plaintiffs heirs allege are worthless debts and which they have a right to deduct from the net income for the year 1943": that the defendant Treasurer of Puerto Rico, through his agents, "accepted and acknowledged that the debts were claims in favor of the taxpayer; that the same represented losses bona fide sustained by the taxpayer, but in any event not deductible for the year 1943."

In the second cause of action they alleged:

"2.—The plaintiffs allege that, despite the agreement made with the defendant, through his duly qualified agents, the defendant levied income tax on the deceased Marcial Suárez Suárez for the year 1944, without taking into consideration the conditional manner in which the assessment made by the Bureau of Income Tax was accepted by the plaintiffs. And he thus levied a tax of forty-two thousand eight hundred ninety-seven dollars and thirteen cents ($42,897.13) on the taxpayer.

"The plaintiffs allege that this action taken by the defendant is equivalent to assessing a tax on the deceased Marcial Suárez Suárez, without his having been notified beforehand, thereby rendering the assessment of said tax void and arbitrary.

"And, the plaintiffs also allege, that when the defendant assessed the tax in this manner through his duly qualified agents, he violated the agreement whereby the tax for the year 1944

would be subject to the outcome of the complaint which the taxpayer might file in this Hon. Tax Court, in order to determine the total amount levied in 1944."

The defendant answered accepting some facts and denying other material facts that might justify, if proved, a favorable judgment to the plaintiffs. After a trial on the merits, the trial court rendered judgment dismissing the complaint.[2] The plaintiffs allege that the trial court committed the following errors:

"I. The trial court lacked *jurisdiction* to consider the merits of the deficiency notified for the year 1943.

"II. The trial court committed error in failing to set aside the deficiency for the year 1944.

"III. The trial court committed error in deciding, as a question of fact, that the taxpayer, Marcial Suárez, had taken steps after the year 1943 to collect the worthless debts claimed as deductible.

"IV. The trial court committed error in deciding that the charging off of the worthless debts from the books of the taxpayer was necessary.

"V. The trial court committed error besides in failing to grant the complaint in all its parts."

In discussing the first error, the appellants maintain that the trial court lacked jurisdiction to take cognizance of and decide the case, because the Treasurer never made notice and assessment of the tax in the name of the heirs of the deceased Marcial Suárez or of his widow Encarnación Fuentes. They argue that when the community partnership was dissolved because of the death of Marcial Suárez, his wife, Encarnación Fuentes, was responsible for 50% of the tax assessed to Marcial Suárez for the years 1943 and 1944, and that the Treasurer should have personally served on her the preliminary and final notice provided by law. Regarding the sons and the grandson of Marcial Suárez, they maintain

---

[2] A motion for reconsideration of judgment was denied because it was not filed within the statutory period. The trial court also denied a motion for new trial filed by the plaintiffs. Nothing has been contended in this appeal regarding the decisions rendered in both incidents.

that the latter are responsible for any deficiency determined by the Secretary of the Treasury insofar as this affects the deceased Marcial Suárez, and not as principal taxpayers; that if they were considered *taxpayers*, then the Treasurer should have notified them of the deficiency, which he failed to do; but since they are not taxpayers and since the Income Tax Act does not establish any proceeding whatsoever for the collection of the tax owed by the deceased, from the heirs, the Treasurer's sole alternative was to proceed by judicial action within the seven years required by law.

Under the second assignment the trial court is charged of having erred in failing to set aside the assessment of the deficiency for the year 1944. The appellants allege as grounds the same lack of notice of the deficiency. Their theory, already stated in the first assignment, is that the notice of the deficiency had to be made in a proportion of 50% of its amount to the widow and the other 50% to the heirs in proportion with their respective hereditary shares. They contend, besides, that the waiver of the final notice of the tax for the year 1944 lacks validity because (1) prior to the approval of Act No. 91 of October 8, 1954, amending the Income Tax Act of 1924 (§ 27), there was no legislative authority permitting the waiver of the restrictions on the assessment and collection of the total or any part of the tax, including the waiver of the period fixed by law for the levying of the tax (§ 60), and (2) the waiver was not signed by the widow nor the heirs.

For the reasons which we shall immediately state, we shall not stop to examine the arguments of the plaintiffs regarding the nullity of the notice of the deficiencies and the nullity of the waiver.

The plaintiffs-appellants acknowledged the correctness or legality of the notice of the deficiencies at the administrative hearing as well as at the trial court. It was on the basis of this notice, now challenged by them, that as alleged

in their complaint, a great number of interviews, conferences, administrative hearings and conversations were held which culminated in the reduction of the original deficiency from $369,576.67 to $161,276.96, that is, a reduction which benefited all the plaintiffs in the sum of $208,299.71. The final deficiency determined for the years in question was accepted by the plaintiffs, except for the year 1943, which by mutual agreement remained unsettled because the Treasurer refused to admit that certain items (worthless debts) claimed by the taxpayers were deductible for said year. It was then that the heirs of Marcial Suárez appealed to the former Tax Court stating both causes of action to which we have referred. In said action there appeared as plaintiffs all the heirs for themselves and "for the judicial administrator Juan Suárez Fuentes." As we shall presently see, the plaintiffs limited the controversy before the trial court to the question of deductibility of the items claimed by them for the year 1943, and of Treasurer's obligation, in case he allowed those deductions, of crediting the remainder of said losses when computing the year 1944, by virtue of the provisions of § 9 of the Income Tax Act.

It is now before us, when the statute of limitations has already estopped the Secretary of the Treasury from acting, that the plaintiffs vehemently attack the validity of the notice of the deficiencies.

In tax matters as well as in other judicial relations, it should not be allowed that one party be in favor and against, as it is more convenient to his interests. *Alamo National Bank* v. *Commissioner of Internal Revenue*, 95 F.2d 622; *Phipps* v. *Commissioner of Internal Revenue*, 127 F.2d 214; *Pearson, Collector of Taxes* v. *Laughlin*, 190 F.2d 658; see *Serra, Garabis & Co., Inc.*, v. *Municipality*, 42 P.R.R. 452; Mertens, Fed. Law of Income Taxation, Mertens, Vol. 9, § 52.20 at 472. The plaintiffs should accept the consequences of their own game.

In the second cause of action the defendants alleged that the Treasurer assessed a tax on Marcial Suárez for the year 1944 without his having been notified beforehand. They further argue in the allegations of the complaint, that their waiver of the notice of assessment of the tax for 1944, before the tax was levied, was conditioned on the judicial decision that might be rendered for the tax year 1943. Assuming that the purpose of the plaintiffs was to attack the final deficiency for the year 1944, on the basis of the lack of notice of the assessment of said tax, let us see what was the position taken by said plaintiffs at the trial court. While Angel de Angel, accountant for the plaintiffs, was testifying, explaining his intervention in the administrative hearings, he stated that an agreement was reached, accepted by his clients regarding the tax to be paid in the years 1941, 1942, 1945, and 1946. When he was asked why an agreement was not reached regarding the years 1943 and 1944, he answered as follows:

"A.—In order to assuage the taxpayer's situation and in order to avoid surcharges for interests, the Bureau was told to send us a waiver. The waivers were sent for the years 1941, 1942, 1945, and 1946. Regarding the year 1943 it was not sent because the agreement was not to accept worthless debts which we alleged should be reported in said return and deducted from the taxpayer's taxable net income and we would go to the Tax Court. Likewise, regarding the year 1944, upon receiving the waiver we made a note in said waiver that that would be the tax to be paid, the agreed waiver, provided the Tax Court rendered judgment against the taxpayer." (Tr. Ev., pp. 14 and 15.)

An argument then arose as to the scope of the document entitled "Waiver of the Restrictions for the Assessment and Collection of Income Tax Deficiencies." Plaintiffs' counsel insisted that they had not waived the notice of the assessment of the tax for the year 1944. Their position was not clear since, apparently, as revealed by the debate between the parties, there was a confusion regarding the issue involved.

The witness Angel de Angel frequently interrupted the attorney and then the judge ordered a recess "so that they would come to an agreement and the counselor could state to the court correctly and clearly the specific point." After the recess, counsel for the parties testified as follows:

"Plaintiff:

"Your Honor, with the Court's leave. While commenting and discussing the case we have reached the conclusion that the main issue is that if the Tax Court ruled that the debts are worthless and applied to the year 1943, the remainder of said losses would be carried over to the year 1944, then the Income Tax Bureau would make the readjustment of the tax for the year 1944.

"Defendant:

"The year 1943 as well as the year 1944 are before the court and we are going to consider them as evidence exclusively in relation to the substantial part, regarding the loss." (Tr. Ev., pp. 22 and 23.)

Thereafter, the controversy in the case was limited to whether the deductions for bad debts were properly applied to the year 1943, and to the readjustment of the year 1944, carrying over to the same the losses remaining from the year 1943, if it were decided that the taxpayer actually sustained those losses. Hence, if the plaintiffs originally intended to raise before the trial court the nullity of the notices of deficiency and the levying of the tax for the year 1944, they abandoned that theory during the trial. They can not raise it now on appeal. *Heirs of Marrero* v. *Santiago*, 74 P.R.R. 763; *Latorre* v. *Cruz*, 67 P.R.R. 696, 705. This would be sufficient to dismiss the first two assignments. It may be added, however, as correctly argued by the Secretary of the Treasury, that the error, if any, regarding the notices, was committed at the instance of the plaintiffs themselves, first, by resorting to the Treasurer to discuss the deficiencies on the basis of the notice which they now challenge, and by obtaining as a result of the steps taken by them, a substantial reduction in the tax to be paid, and second, by the ap-

pearance at court of all the heirs for themselves and for their judicial administrator in order to discuss, as it had been agreed, the year 1943, with the resulting consequences regarding the year 1944, if their claim for 1943 prospered. Finally, we shall say, regarding these first two assignments, that the plaintiffs did not suffer any prejudice whatsoever on account of the alleged defects in or lack of notice of the deficiencies, nor were they deprived of the opportunity to defend themselves against the determination of the former Treasurer of Puerto Rico. See, 9 Mertens, *supra* § 50.11; *Commissioner of Internal Revenue v. Stewart*, 186 F.2d 239; *National Bank of Commerce et al., Trustees v. Commissioner of D. R.*, 34 B.T.A. 119; *Olsen v. Helvering*, 88 F.2d 650; *Haag v. Commissioner of Internal Revenue*, 59 F.2d 516; *Commissioner of Internal Revenue v. New York Trust Co.*, 54 F.2d 463. The question of readjustment of the year 1944 by crediting to said year the losses remaining from 1943 becomes moot if we decide, as the trial court did, that Marcial Suárez did not sustain said losses in the above-mentioned year.

We shall discuss the third and fourth assignments jointly. We have seen that the third assignment attacks the trial court's finding to the effect that the taxpayer Marcial Suárez had taken steps after the year 1943 to collect the worthless debts claimed as deductible, and in the fourth they argue that it was an error to decide "that the charging off of the worthless debts from the 'Books' of the Taxpayer was necessary."

The plaintiffs claim the deduction of $100,164.34 [3] as

---

[3] Said sum consists of the following items:

"I.—Balance in favor of Marcial Suárez in current account between the latter and his brother Herminio Suárez .................................... $41,622.79

"[See Exhibit I of the plaintiffs, and B of the defendant.]

"This current account was from June 19, 1917 until September 30, 1918. It con-

worthless debts for the year 1943, by virtue of § 16 (*a*) 7 of the Income Tax Act of 1925, which provides that in computing the net income of a taxpayer there shall be allowed as deductions "debts judged to be worthless and charged within the taxable year (or, in the discretion of the Treasurer, a reasonable sum as a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Treasurer may allow such debt to be charged off in part."

Interpreting the preceding section of the Act, we stated in *Díaz* v. *Tax Court*, 69 P.R.R. 789, that the deduction for a bad debt is permitted when its worthlessness is definitively

tained 10 items of 'debit' and two of 'credit.' It referred to advances of money made by Marcial Suárez Suárez to Herminio Suárez, who died on October 9, 1919.

"II.—A set of five promissory notes as follows:

| | |
|---|---|
| "One, of July 31, 1922, due on July 31, 1923 for | $7,500.00 |
| "Another of the same date, due on July 31, 1924, for | 7,500.00 |

"Both in a single document, were signed by H. Suárez. See Exhibit III of the plaintiffs.

| | |
|---|---|
| "One, of January 25, 1921, payable July 31, 1921, signed by H. Suárez and Ceferino Fernández, for | $5,000.00 |
| "Another, of January 25, 1921, due on July 31, 1922, for | 5,000.00 |
| "Another, of January 25, 1921, due on July 31, 1923, signed by H. Suárez, Jr. and Ceferino Fernández, for | 5,000.00 |
| "Another (without date) due on July 31, 1924, signed by H. Suárez, Jr. and Ceferino Fernández, for | 5,000.00 |
| | 35,000.00 |

"See Exhibit II of the plaintiffs and A of the defendant.

| | |
|---|---|
| "III.—Sum of five entries owed by the said heirs of Herminio Suárez Suárez, from February 3, 1923 until September 27, 1924 | 23,541.54 |
| Total | 100,164.33" |

(Findings of the Court, p. 29.)

ascertained. We further said that the justification for a deduction of this sort, the same as for the deduction of a loss, "must be shown or proved by some 'identifiable event' or by attending circumstances which support an ascertainment of worthlessness." In *Valdés* v. *Tax Court; Descartes, Treas., Int.*, 71 P.R.R. 670, 675, we ratified the principle that deduction for a bad debt is allowable when its worthlessness is ascertained. Previously we had decided that the opinion of the taxpayer as to whether a debt is worthless or not is not controlling; that undoubtedly, when other proofs are lacking, the position adopted by the taxpayer must carry some weight, but the Treasurer is not necessarily bound thereby; that the Treasurer should decide the judicial question after considering all the attending circumstances and with a view to harmonizing the interests of the taxpayer with those of the public treasury. *Soto* v. *Domenech, Treasurer*, 45 P.R.R. 267 and *Mujica* v. *Sancho, Treas.*, 62 P.R.R. 5.

The appellants argue that the conversation which took place between Marcial Suárez and Herminio Suárez Padilla in 1943 in "El Chévere" restaurant, is the 'identifiable event' which led Marcial Suárez to conclude that his credits were worthless, and that they had been lost; [4] and they argue thus:

---

[4] The evidence of that conversation consisted in the testimony of Veremundo Quiñones, who testified as follows:

"Q.—Mr. Quiñones, did you state that you knew Marcial Suárez more than 50 years ago and also Herminio Suárez Padilla?

"A.—Yes, sir.

"Q.—When did you see, more or less, Herminio Suárez Padilla for the last time?

"A.—In 1943.

"Q.—Does that relation remind you of anything?

"A.—It reminds me of something because on that day I was at home.

"Q.—What day was it?

"A.—I think it was on Tuesday, but I do not recall the date, I was in the store and the old man who was a very good friend of mine, arrived and said to me, let us go to Santurce because I have been told that Herminio came and sold the farm in Santo Domingo, and let us see if he gives me some money. We went to the Mimiya Clinic, and he was not

"The Secretary did not present any evidence whatsoever to the effect that this determination of Marcial Suárez, made in a restaurant in Santurce, was not true and much less that it was not sufficient ground for Marcial Suárez to consider worthless at that moment and for that year 1943, the debt in question.

"The plaintiffs' difficulty in this case lies in the fact that it was necessary to prove, as it was proved in our opinion, that Marcial Suárez, who had died by the time of the litigation, had considered the debts as worthless. If Marcial Suárez had been alive at the time of the litigation, it would have been easy for the latter to prove other facts which led him to believe and consider said debts as worthless. A worthless debt is not established by acts and deeds involved in the preparation of a document, or shown in any way by physical evidence, years after the death of the person who made such determination.

---

there and then we went to 'El Chévere' and when the old man asked him, have you anything of what you owe me. . . .

"Defendant:
"Q.—Who was there?
"A.—Marcial was speaking to Herminio Suárez Padilla.
"Q.—Is he dead or alive?
"A.—He is alive.
"Plaintiff:
"Q.—Were you present?
"A.—Yes, I was there, I was with Marcial Suárez.
"Judge:
"Q.—Did you say that it was Herminio Suárez who had come?
"A.—No, Marcial Suárez, the old man.
"Q.—Was that in 1943?
"A.—Yes, sir.
"Plaintiff:
"Q.—In 'El Chévere' did he meet Herminio Suárez?
"A.—Yes, sir, Herminio, and I was with Marcial Suárez.
"Q.—Who was in 'El Chévere?'
"A.—Herminio Suárez, and Marcial told him, look, I am very bad off and I need money, and he answered, if you are bad off, I am bad off also. Then he said that he owed him more than one hundred thousand dollars and didn't give him a cent.
"Q.—Then, you both left?
"A.—Yes, sir, we left.
"Q.—Was that in 1943?
"A.—Yes, in 1943.
"Q.—Are you positively certain?
"A.—I am certain, I have never said a lie." (Tr. Ev., pp. 77 to 79.)

In what other manner could the plaintiffs have proved in this case that Marcial Suárez considered the debts which are the object of this litigation as worthless in the year 1943? Bearing in mind the hardships of such proof and bearing also in mind that the Secretary of the Treasury did not present any evidence whatsoever to contradict the testimony of Veremundo Quiñones to the effect that Marcial Suárez had considered said debts as worthless at a certain moment when he spoke with the debtor in a restaurant in Santurce, the court could only conclude that it had been proved that the taxpayer, that is, Marcial Suárez, had considered worthless the debts involved in this litigation. *Soto* v. *Secretary of the Treasury*, 78 P.R.R. 169 (April 19, 1955) and *Vilanova* v. *Secretary of the Treasury*, 78 P.R.R. 768 (November 23, 1955).

"The fact that José Suárez had approached Herminio Suárez after 1943 in an attempt to collect a part of the debt, has no bearing on the fact that Marcial Suárez had considered said debts as worthless in the year 1943. It is the taxpayer and not his son or other relatives who must consider the same as worthless." (Appellants' brief, pp. 23 and 24.)

There are various flaws in the arguments of the appellants. The conversation held between Marcial Suárez and Herminio Suárez Miranda only proves that in 1943 Marcial Suárez made an idle attempt to collect the debts. Perhaps from that conversation Marcial Suárez may have gathered that his debts were worthless, but he did not necessarily *have to* conclude that it was so, as contended by the appellants. Neither is it correct to affirm that the witness Veremundo Quiñones expressed himself "to the effect that Marcial Suárez had considered said debts as worthless at a certain moment when he spoke with the debtor in a restaurant in Santurce. . . ." What the witness states, as we have seen, is that Marcial Suárez told Herminio Suárez that he was extremely bad off and that he needed money, to which the latter answered that he also was bad off, and that then, Marcial Suárez told him that he owed him more than one hundred thousand dollars, and that Herminio Suárez did not even give him a cent.

It was up to the appellants to prove at that moment, or as a result of this conversation, that Marcial Suárez believed that already in the year 1943 his debts were bad and that it was definitively useless to attempt to collect them.[5]   Such evidence was not established.   On the contrary, when Marcial Suárez filed his income tax return for 1943 in March 1944, he did not deduct said debts as worthless debts.   Moreover, after 1944 Marcial Suárez did not take any steps either to claim, in his subsequent income tax returns, the deduction of those debts as worthless.   On the other hand, José Suárez Fuentes, son of Marcial Suárez, took steps on numerous occasions to collect that debt, the last one being in 1949 when he went to New York to claim from Herminio Suárez the payment of the debt.   It is difficult to believe that Marcial Suárez was not aware of these steps or that they were not made at his suggestion or request, especially if we consider that José, during the life of Marcial Suárez, took with him the promissory notes and presented them to Herminio Suárez in New York for collection.   The appellants admit that the difficulty here lies in the fact that it was necessary to prove and they allege that they proved it, that Marcial Suárez, who had died at the time of the suit, had considered the debts as worthless, and had he been alive at the time of the suit it would have been easy for him to prove other circumstances which led him to believe and consider said debts worthless.   However, the impossibility of proving a substantial fact on which the right of the taxpayer depends, does not help him any when he has the burden of the proof. 9 Mertens, Law of Federal Income Taxation, Ch. 50, § 50.61 at 277.

The bad debts involved in this litigation were not charged off in the books of the taxpayer in 1943, nor in the subsequent years.   The plaintiffs maintain that these debts did not appear in the books of Marcial Suárez and that, therefore, it

---

[5] See *San Miguel & Co.* v. *Secretary of the Treasury*, 79 P.R.R. 326, 343–44.

was impossible to charge them off. The witness Juan Suárez Fuentes, who was Marcial Suárez's attorney-in-fact since 1936 and who always had the books in his custody, directly or indirectly, according to his testimony, assured that in said books there appeared no payment or credit of those debts. He was unable to state, however, that in such books there was no entry of the debts. However, the parties stipulated that the accountant Angel de Angel, witness for the plaintiffs, would testify "that he investigated the accounting books of the heirs of Suárez, and that in said books the debts to which the complaint refers are outstanding."

The third and fourth errors were not committed. The fifth was not committed either. In this assignment the appellants contend that the trial court lacked authority to determine a deficiency on other grounds than those prescribed by the Secretary in this determination of deficiency. The argument is grounded on the fact that inspector Velázquez Albó stated that when he practiced the investigation he gave credit to some documents and none to others, and consequently, he believed that he had not proved the existence and legitimacy of the debt.

Apart from the fact that there is nothing in the record to show that the opinion of the inspector constituted an administrative determination, the truth is that the former Treasurer denied the deduction of said debts and that one of the grounds was that said debts were not deductible in 1943. It was so understood by the appellants. In their complaint they alleged (1) the existence of the debts and (2) that these debts had been considered worthless for the year 1943. They failed to prove, however, that the afore-mentioned debts were worthless debts for the year 1943, and that it had been so considered by the taxpayer Marcial Suárez.

In view of the foregoing, the judgment rendered by the Superior Court on February 13, 1953 shall be affirmed.

Mr. Justice Santana Becerra did not participate herein.